ANAHEIM UNION WATER COMPANY, A CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SANTA ANA RIVER DEVELOPMENT COMPANY, A CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 72128, 72129. Filed March 29, 1961.

*Max L. Gillam, Esq.,* and *Henry C. Diehl, Esq.,* for the petitioners.
*Alfred L. Margolis, Esq.,* and *Wesley A. Dierberger, Esq.,* for the respondent.

**OPINION.**

RAUM, *Judge:* 1. Although Anaheim was at one time an exempt corporation, it had ceased to be such for a number of years because of the substantial income which it had been receiving from oil royalties and other sources.[1] There is no dispute between the parties that Anaheim is a taxable corporation, and this case must be decided upon that assumption. The Commissioner determined that Anaheim's water costs or expenses incurred in the distribution of water to its shareholders were not deductible as ordinary and necessary business expenses to the extent that they exceeded the revenue received by it from the sale of such water.

It is plain from the record before us that the directors deliberately fixed the water rates at such level that when the amounts paid by the shareholders for the water are added to the corporation's income from oil and other sources the sum will be such that after subtracting the cost of supplying the water no net taxable income remains. In substance the corporation distributed its oil royalties and other income to its shareholders through the medium of charging them less than cost for water. Although the question for decision has been variously stated by the parties from time to time—and subtle differences may perhaps be thought to turn upon the form of the statement—we think that the real issue before us is whether the water costs or expenses incurred by Anaheim are ordinary and necessary expenses on this record to the extent that they exceeded the amounts which Anaheim obtained for such water from its shareholders. We hold that to the extent of such excess they do not qualify as "ordinary and necessary" expenses.

The question is not whether such expenses might be "ordinary and necessary" in other situations. The question rather is whether such expenditures in this case, known in advance to be in excess of what the corporation would obtain for the water sold to its share-

---

[1] The exemption was based upon section 101(10) of the Revenue Act of 1934 (and cognate provisions of other revenue acts) which included among exempt corporations "mutual ditch or irrigation companies, * * * or like organizations; but only if 85 per centum or more of the income consists of amounts collected from members for the sole purpose of meeting losses and expenses." The administrative ruling that Anaheim was exempt was withdrawn in 1939, since its oil and other income was of such magnitude as to render it incapable of complying with the 85 percent requirement.

holders, can fairly be classified as "ordinary and necessary." We think that they are neither "ordinary" nor "necessary." Indeed, it appears to us to be "in a high degree extraordinary," cf. *Welch* v. *Helvering*, 290 U.S. 111, 114, for a corporation to incur business expenses in connection with goods or services in an amount greatly in excess of what it knows it will obtain for such goods or services. To be sure, exceptional circumstances may exist in other situations that would justify the deduction where expenses exceed anticipated income. For example, extraordinarily large outlays may be made by a business when introducing a new product where the reasonable expectation exists that sales in later years will more than compensate for losses in the early years. But no such exceptional circumstances exist here. In essence, the entire setup is merely a device to distribute the oil and other unrelated income to the shareholders. Although Anaheim was clearly not incorporated for that purpose in 1884, the fact nevertheless remains that it has been used for that purpose in recent years.[2] Cf. *United States* v. *Joliet & Chicago Railroad Co.*, 315 U.S. 44, where the controlling indenture was executed in 1864. And we are of the opinion that the water expenses incurred herein in excess of the amounts which the directors reasonably expected to obtain for the water were not "ordinary and necessary" expenses, but were merely part of a plan to distribute otherwise taxable income to the shareholders.

We have not been directed to any decisions squarely in point. However, there are cases which, although perhaps distinguishable, nevertheless point the way to the proper disposition of this controversy. In *International Trading Co.* v. *Commissioner*, 275 F. 2d 578 (C.A. 7), affirming a Memorandum Opinion of this Court, a corporation was not allowed to deduct expenses in excess of rent received on certain lakeside property leased to its principal shareholders. It was held that the difference between expenses incurred and rents received was not an ordinary and necessary expense of the corporation, since (p. 585) "the property was purchased and improved with the knowledge that it would not earn a profit, and was not expected to earn a profit, but was maintained primarily for the personal benefit of the families of the corporation's stockholders, without a corre-

---

[2] In 1943, the one year in which Anaheim's directors accidentally set a water rate which together with the non-water income yielded a net profit, the following revealing item appeared in the minutes of Anaheim's board of directors under date of December 20, 1943:

"The Secretary reported that he had prepared estimates on income and expense for the year 1943, this estimate included the actual income and expense for eleven months plus an estimate for December, 1943. The result was that we would show a net profit from operations of approximately $22,500.00. He stated that he had consulted Mr. Diehl of the firm of Diehl and Company, Accountants, and that the income tax on this amount would amount to approximately $5,000.00. The Secretary further stated that he had discussed with Mr. Diehl a refund to water users. Water deliveries would be approximately $97,700.00, and a refund of 25% would amount to approximately $24,400.00. Whereupon * * * [motion was made and unanimously carried for a refund]."

sponding benefit to the corporation * * *." Deduction for that portion of the expenses which did not exceed the rent was not contested.

Our own decision in *Pomeroy Cooperative Grain Co.*, 31 T.C. 674, is also instructive. There a nonexempt cooperative carried on business with nonmembers as well as members. It was allowed to exclude from its gross income the amount of patronage dividends paid to its members that was based upon receipts from such members; but it was not permitted to eliminate from its gross income a similar amount equal to that portion of patronage dividends paid to its members that was based upon receipts obtained from nonmembers. In short, income obtained from nonmembers that was otherwise taxable could not in effect be distributed to the members through the medium of patronage dividends so as to render it tax free. Anaheim's operations are similar in many respects to those of a cooperative and the question presented in *Pomeroy* of properly reflecting the taxable income obtained from transactions with nonmembers (though raised in the context of an income rather than expense problem) is not unlike the issue of properly reflecting Anaheim's non-shareholder income from oil royalties and other sources. We think it no more appropriate to bury such income for tax purposes in Anaheim's designedly insufficient water rates than in *Pomeroy's* so-called patronage dividends. Just as the Court in *Pomeroy* refused to treat the contested distributions as true patronage dividends, we similarly refuse to be misled by form in this case; for what might in other circumstances be an "ordinary and necessary" expense is here merely a device for distributing unrelated taxable income and is in fact not an "ordinary and necessary" expense on the record before us.

*Glendinning, McLeish & Co.*, 24 B.T.A. 518, affirmed 61 F. 2d 950 (C.A. 2), and *Horace E. Podems*, 24 T.C. 21, are also helpful in arriving at the correct answer in the present case. They dealt with the question whether deductions for "ordinary and necessary" expenses are allowable where the taxpayer might have obtained but in fact took no steps to receive reimbursement for the expenditures in issue. Anaheim's purposeful arrangement of not seeking full reimbursement of its water costs from its shareholders makes the denial of deductions in those cases especially significant. Since Anaheim's amended articles of incorporation provided that water was to be supplied to the shareholders "at cost," it appears that there was ample authority for the directors to fix the rates so that the company would be fully reimbursed for its water expenses without regard to other income. Moreover, even if it be assumed that the directors had no such power by reason of changes in bylaws or otherwise, such lack of power would merely be a consequence of arrangements voluntarily accepted by Anaheim and would therefore be irrelevant here. Not only were Anaheim and its shareholders fully able to control the content of the

bylaws and other possible documents affecting their relations *inter sese*, but Anaheim in any event could have assured itself of full reimbursement for its water expenses by segregating or divesting itself of its profitable non-water business (in such manner that its shareholders would continue to benefit therefrom) and thereby have remained a bona fide nonprofit mutual irrigation company selling its water at cost. However, the fact that it deliberately chose not to do so, thereby blending its profitable non-water operations with its water business, does not entitle it to claim successfully under the Federal statute [3] that its directors were *required* to fix the rates so as to operate the water business at a loss.

2. A similar issue is presented in SARD's case, since it appears from the record that SARD charged its shareholders, Anaheim and SAVI, less than cost for the water services it furnished them during the tax years in question because it, too, applied non-shareholder income to the payment of its expenses. We think a like decision is called for in respect of the Commissioner's adjustments relating thereto. Unlike Anaheim, SARD by agreement with its shareholders in 1944 was specifically required to apply its "rents, issue, and profits" from its land to its water service expenses before billing its shareholders for them. However, we do not consider this difference crucial. It is no more "ordinary and necessary" for a corporation by agreement to expend more for its services than it is paid than it is to do the same thing without an agreement. The agreement merely tends to make explicit in SARD's case what was apparent in the absence of an agreement in Anaheim's, namely, that a corporation which charges its shareholders less than cost for its goods or services and uses otherwise taxable income to pay for the expense differential is, in effect, merely making a distribution of such taxable income to the shareholders without a formal declaration of dividends.

3. There remains finally the issue whether rental income in 1952 and 1953 and rental expenses in 1952, 1953, and 1954 reported by SARD should have been allocated to Anaheim as cotenant of the rental property as determined by the respondent. The respondent contends that SARD is a separate entity and that its rental income and expenses should have been allocated to the parties, Anaheim and SAVI, to whom such income and expenses are attributable. Anaheim, on the other hand, claims that SARD is merely an agent created to carry on upstream water conservation activities on behalf of the two downstream water companies, Anaheim and SAVI.

---

[3] Compare *Pomeroy Cooperative Grain Co.*, 31 T.C. 674, 685, where the Court pointed out that in determining what patronage dividends were to be excluded from gross income, the problem "is controlled by Federal law" and not by State law (in that case Iowa) which provided how and to whom the earnings of the cooperative might be distributed.

SARD, Anaheim, and SAVI are each separate corporate entities. The fact that SARD may have performed functions as an agent for Anaheim and SAVI in no way permits SARD to report on its own returns the entire rental income and expense from those lands in which it was a cotenant with Anaheim and SAVI. The aggregate rental income derived from these properties should have been allocated together with the corresponding rental expenses to each of the three corporations and so reported by them. *National Carbide Corp.* v. *Commissioner*, 336 U.S. 422 (1949); Rev. Rul. 59-247, 1959-2 C.B. 14.

The respondent's determination that the rental income reported by SARD in 1952 and 1953 and the rental expense deducted by SARD in 1952, 1953, and 1954 should have been allocated to the parties to whom such rental income and expense is attributable, is sustained. There is nothing in the record which would demonstrate that the allocation made by the respondent of the income and expenses was arbitrary or unreasonable and we approve the allocation as made.

Reviewed by the Court.

*Decisions will be entered for the respondent.*

---

TURNER, *J.*, concurring: As I see this case, the result must still be the same even if Anaheim should be sustained in its contention that its entire outlay in producing the water sold to its stockholders represented ordinary and necessary expenses in the conduct of its business and was thereby deductible in full. Under its bylaws, as amended in 1934, it was to supply water to its stockholders at cost. It would accordingly follow that the stockholders were obligated to pay cost. If then Anaheim should be held to be correct in its contentions, the shareholders must be said to have paid the cost when Anaheim's rent and oil royalty income was applied, together with the money actually paid by the water purchasers, in satisfaction of their water purchase obligations. The gross receipts from water sales would thus be increased to the same extent that Anaheim's rent and oil royalty income was so applied. And with the receipts from water sales thus being exactly the amount of the outlay in production thereof, Anaheim's rent and oil royalty income would be left intact as net taxable income, allowance, of course, being made for any proper deductions attributable to the production of such income.

Furthermore, as the opinion of the Court herein suggests, it does not seem to me that the fact that the transactions of SARD with Anaheim and SAVI were pursuant to written agreement presents a crucial difference with respect to those transactions.

---

WITHEY, *J.*, concurring: I concur that there are deficiencies in the income tax of petitioner based on the amount of the oil royalties and rentals received by it in the years at issue. It should not be held, however, that the actual costs incurred in taking the water from the river, storing it, delivering it to petitioner's stockholder customers, and maintaining the facilities to do so are not ordinary and necessary business expenses. There is no dispute here as to the amount of such costs or its reasonableness. Such being the case, to hold they do not constitute ordinary and necessary expense merely because they were in part defrayed by application of oil royalties and rentals acquired from a separate enterprise to such water costs does violence to the basic concept of taxation upon net business income.

Petitioner is taxable on the oil royalties and rentals because, in substance, they or the water into which they were converted are clearly surplus after the conversion which was distributed to petitioner's stockholder customers at an amount less than the water's value exactly corresponding to such royalties and rentals. In substance then the royalties and rentals were so distributed as dividends. As stated, such dividends were paid from a water surplus. For illustration, it is considered that a gallon of water reaches petitioner's headgate in the river. At that point it has no intrinsic value to petitioner for it then must be taken, stored, and delivered and the facilities to do so maintained. By the application of its oil royalties and rentals to that processing, the gallon of water immediately upon being taken from the river begins to acquire value to the extent such royalties, rentals, and the rate paid by the customer are applied to its processing. At the point where the gallon of water is about to be turned over to the customer it is worth at least the cost of bringing it to that point— for the sake of discussion let us say 10 cents. One cent of the cost is paid by the stockholder customer and 9 cents defrayed from royalties and rentals. The 9 cents thus distributed is then in substance clear surplus in petitioner's hands and a distribution by way of a dividend to such customers. The surplus is taxable business net income.

---

TIETJENS, *J.*, dissenting: The purpose for which Anaheim was formed was to furnish water to shareholders. That purpose still persists although a substantial portion of Anaheim's revenues is now obtained from oil. It is amply clear that the expenses which are here in issue were incurred in carrying out Anaheim's business of furnishing water—they were actual expenses of the business and in our opinion they were ordinary and necessary expenses. To deny that they were ordinary and necessary, as the majority opinion does to the extent that they exceeded the amount charged to shareholders, seems to say

that it is the source of the funds used to pay the expenses, rather than the character of the expenses themselves, which determines whether or not they are deductible. I think this is wrong.

This case is not the same as *International Trading Co.* v. *Commissioner*, 275 F. 2d 578, cited in the majority opinion. The Court there denied deduction for corporate expenditures on a residential property which "was not economically integrated with any other commercial property of the taxpayer" and was held "for the personal benefit of the stockholders and at the expense of the corporation." In other words, the expenditures sought to be deducted were incurred in connection with property not used in the trade or business of the taxpayer or held for the production of income. That is not the case here, for here the claimed expenses were made for no other purpose than to carry on the taxpayer's business of furnishing water.

This case is also different from *Glendinning, McLeish & Co.*, 24 B.T.A. 518, aff'd. 61 F. 2d 950. In that case the taxpayer had a clear right to be reimbursed for the claimed expenditures. I can find no such right here.

And in *Horace E. Podems*, 24 T.C. 21, the taxpayer was an employee who claimed deductions for automobile expenses incurred in the business of his employer for which he was entitled to reimbursement, but which reimbursement he failed to claim. The expenditures were not incurred in the employee's business, but were properly those of the employer and were disallowed. *Coplon* v. *Commissioner*, 277 F. 2d 534, affirming a Memorandum Opinion of this Court.

As pointed out in the majority opinion, *Pomeroy Cooperative Grain Co.*, 31 T.C. 674, dealt with a problem of what constitutes gross income and not with what is an ordinary and necessary business expense. I do not think it is applicable here since respondent has specifically abandoned his contentions based on increased income.

In conclusion I point out that the only question urged by the parties is the deductibility or nondeductibility of the claimed expenses. Accordingly, that is the only question which should here be decided. We need not pass upon or evaluate theories not advanced by the parties or abandoned on brief, such as increasing the petitioner's gross receipts by the amount of the water costs not charged to shareholders or the possibility that constructive dividends were paid.

I find no warrant in the internal revenue laws for disallowing the claimed expenses and respectfully dissent.

BRUCE, FORRESTER, and DRENNEN, *JJ.*, agree with this dissent.