ARMOUR-DIAL MEN'S CLUB, INC., PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10435–78.      Filed July 1, 1981.

*Matthias A. Lydon*, for the petitioner.
*William E. Bogner*, for the respondent.

NIMS, *Judge*: Respondent determined deficiencies in petitioner's Federal income tax for the taxable years ending March 31, 1974, and March 31, 1975, in the respective amounts of $16,238 and $20,843. The issues for decision are: (1)

1

Whether petitioner is a membership organization under section 277[1] for purposes of limiting the deductibility of various expenditures for recreational entertainment and social functions, or alternatively, (2) whether these expenditures are ordinary and necessary expenditures of a trade or business within the meaning of section 162.

## FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation and the exhibits attached thereto are incorporated herein by reference.

At the time the petition in this case was filed, petitioner's principal office was in Chicago, Ill.

Armour-Dial, Inc. (Armour), is a Delaware corporation engaged in the manufacture and production of food and various consumer products, particularly soap and soap-related products.

Petitioner is a not-for-profit corporation which is not exempt from taxation under the provisions of the Internal Revenue Code. Petitioner has a membership which is limited to current salaried employees and retired employees of Armour. As stated in its certificate of incorporation and bylaws, petitioner's purpose is:

> To promote a better social relationship among the salaried and steady time employees, and to promote athletics, recreational activities, and such other enterprises as will create a more friendly relationship and harmony in the organization and will by the exchange of thoughts and ideas, be of mutual benefit to all concerned.

Petitioner's bylaws originally limited active membership in petitioner to all male employees of Armour, 21 years of age and older, who were on salary or who had previously joined petitioner while on salary. In addition, petitioner's bylaws originally limited honorary membership in petitioner to any male executive of Armour who was selected by a majority vote of the board of directors and to male members of the club retiring on a pension. However, as of the date of the trial in

---

[1] All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise specifically indicated.

this case, petitioner admitted female salaried employees of Armour into membership.

During the taxable years at issue, petitioner operated a retail store at 1344 West 31st Place, Chicago, Ill., from which it sold Armour's reject soap, detergent, and other products to the public and to Armour employees. Ninety percent of the products sold were purchased by petitioner from Armour at factory cost or less. In some instances, Armour provided support to the petitioner by selling its first class product when reject product was not available. Petitioner's store operation provided Armour with a means of disposing of its reject product at a lower cost and under circumstances which would prevent the product from finding its way into regular distribution channels. The volume of petitioner's sales is relatively very small vis-a-vis Armour's entire output.

Although Armour has no ownership interest in petitioner, it encouraged and supported petitioner by providing the use of its bulletin boards and assisting in such matters as delivery of the product, mail, and copying. It also permitted the conduct of petitioner's business on company time.

Armour maintained supervision over petitioner's activities including its membership requirements. For example, Armour exercised control over the operation of petitioner's store by requiring products to be unwrapped before sale, by prohibiting advertising, and by directing the club to take certain products.

The gross profits generated by petitioner's retail store were used by petitioner to enable its members to enjoy various recreational, entertainment, and social functions at a reduced or no cost to them. Armour intended petitioner's profits to be used in this manner and would not have permitted petitioner to operate otherwise. There were approximately 10 major social functions a year including golf tournaments, theater-dinner parties, football outings, dinner dances, and smokers. Armour believed that petitioner's social and recreational functions were beneficial to Armour's business activities by inducing lower employee turnover and promoting harmonious employee relationships.

Armour considered membership in petitioner a benefit of employment; it provided a brochure for its personnel department so that new salaried employees could become aware of

club membership as a fringe benefit. This brochure stated in part:

As a source of revenue, the Club operates a variety store that sells the products of Armour-Dial, Inc. and many other items, ranging from toiletries to transistor radios. * * *

Because of these revenues, the cost of membership is limited to an initiation fee of $5.00 and dues of only 25¢ a week. These fees are returned to the members many times over. * * *

Petitioner's dues were collected by Armour by way of a deduction from each individual member's payroll checks. During the years at issue, new members were required to pay a one-time initiation fee of $5; annual dues were $13 for each member. During 1973 and 1974, petitioner had between 260 and 280 active members and 48 to 50 honorary members. Petitioner received initiation fees and dues (membership income) during the taxable years ending March 31, 1974, and March 31, 1975, in the respective amounts of $3,518.05 and $4,087.25.

Petitioner expended $43,318.61 and $53,076.14 during the taxable years ending March 31, 1974, and March 31, 1975, respectively, for the recreational, entertainment, and social functions it provided for its members (membership expenses). In addition, the following membership expenses were incurred by petitioner for the 2 taxable years at issue:

| Type of membership deduction[2] | TYE Mar. 31, 1974 | TYE Mar. 31, 1975 |
|---|---|---|
| Flowers and gifts | $254.25 | $185.38 |
| Club expenses | 2,021.02 | 2,285.02 |
| Retirement benefits | 250.00 | 150.00 |

---

[2]These expenditures were authorized by the following sections of article III of petitioner's bylaws:

SECTION 9. DEATH BENEFIT.

A check for $100.00 will be issued to the beneficiary of any active member, or in lieu of a specified beneficiary, to his nearest living relative.

SECTION 10. FLOWERS.

Flowers or an equivalent contribution will be sent in the event of death of any member or his immediate family to include mother, father, sister, brother, wife or child.

SECTION 11. RETIREMENT.

Upon retirement, an active member who has at least 10 years consecutive membership in the Club at that time will receive a $50.00 gift. A member who has 25 or more years consecutive membership will receive a $100.00 gift. This gift is in lieu of the death benefit.

Death benefits ............................... 0     $100.00
Meeting expenses ................ $1,602.07     2,386.49
   Totals ............................ 4,127.34     5,106.89

The various membership expenses which petitioner incurred during the taxable years at issue were deducted on its income tax returns under the category of "other deductions."

During the taxable years at issue, petitioner's store had the following amounts of gross receipts, costs of goods sold, and gross profits:

### TYE Mar. 31, 1974
Gross receipts ............................. $338,239.27
Less: cost of goods sold .................. 272,826.04
Gross profit .................................... 65,413.23

### TYE Mar. 31, 1975
Gross receipts ............................. $424,806.35
Less: cost of goods sold .................. 339,168.25
Gross profit .................................... 85,638.10

Petitioner reported these amounts on lines 1, 2, and 3 of its corporation income tax returns for the taxable years ending March 31, 1974, and March 31, 1975, respectively. Petitioner also received and reported interest income in the following amounts:

### TYE Mar. 31, 1974
Interest income ................................ $302.75
Vending machine income ..................... 404.67

### TYE Mar. 31, 1975
Interest income ................................ $560.62
Vending machine income ...................... 77.43

## OPINION

Petitioner is a club which provides various social and recreational activities (membership activities) for its members, primarily the salaried employees of Armour. Petitioner also operates a retail store in Chicago from which it sells a variety of Armour's reject products as well as other items. Members are required to pay initial as well as annual membership dues which totaled approximately $3,500 and $4,000 for the 2 respective taxable years in issue (petitioner's membership income). The expenditures for membership activities totaled

approximately $47,000 and $58,000 for the 2 respective taxable years. The additional money needed to pay for the excess membership expenditures (that is the amount over and above the membership income brought in) came from the profits generated by petitioner's retail store and also from limited amounts of interest and vending machine income. The expenditures for petitioner's membership activities were deducted from petitioner's income on its returns for each year in issue.

The issue in this case is whether the expenses which petitioner incurred in connection with its membership activities are deductible as an offset against petitioner's nonmembership income. In essence, respondent has bifurcated petitioner's activities into membership and nonmembership categories for purposes of petitioner's income and expenses and argues that the deductions for petitioner's membership activities should be limited to the amount of petitioner's membership income. Respondent relies on two alternative theories to so limit petitioner's deductions: that petitioner is a social club within the meaning of section 277; and that petitioner either was not carrying on a trade or business for section 162 purposes since it did not have a primary, dominant profit motive, or that the membership expenditures were not "ordinary and necessary" as they bore no relation to any income producing activity of petitioner.

I.

Section 277[3] enunciates a general rule of disallowance of a

---

[3]SEC. 277. DEDUCTIONS INCURRED BY CERTAIN MEMBERSHIP ORGANIZATIONS IN TRANSACTIONS WITH MEMBERS.

(a) GENERAL RULE.—In the case of a social club or other membership organization which is operated primarily to furnish services or goods to members and which is not exempt from taxation, deductions for the taxable year attributable to furnishing services, insurance, goods, or other items of value to members shall be allowed only to the extent of income derived during such year from members or transactions with members (including income derived during such year from institutes and trade shows which are primarily for the education of members). If for any taxable year such deductions exceed such income, the excess shall be treated as a deduction attributable to furnishing services, insurance, goods, or other items of value to members paid or incurred in the succeeding taxable year. The deductions provided by sections 243, 244, and 245 (relating to dividends received by corporations) shall not be allowed to any organization to which this section applies for the taxable year. [Sec. 277(b) contains exceptions relating to banking institutions, insurance companies, national securities exchanges and "contract markets" not relevant to our inquiry.]

social club's deductions attributable to furnishing services, goods, insurance, or other items of value to its members. If that section is applicable, such deductions are allowed only to the extent of the club's income from members or from transactions with members. Any excess is treated as a membership expenditure paid or incurred in the succeeding taxable year.

In order for section 277 to be operative, three conditions must be satisfied. The entity must be (1) a social club or other membership organization; (2) operated primarily to furnish services or goods to its members; and (3) nonexempt from taxation. The parties have stipulated that petitioner is not exempt from taxation. Additionally, it readily appears from petitioner's name, its stated purpose, and from the social activities which are provided for its members that petitioner is a "social club or other membership organization." Consequently, the only question insofar as the applicability of section 277 is concerned is whether petitioner was operated primarily to furnish services or goods to its members.

With the issue under section 277 being so framed, petitioner maintains that it was created to promote better relationships among Armour's employees, with the primary beneficiary thus being Armour and not its members. Petitioner accordingly asserts that its main purpose was not to provide services or goods to its members, but to aid Armour in the operation of its business activities. Respondent replies by noting that the applicability of section 277 hinges on an organization's operations and not the purposes underlying its formation. With the test being posited in this manner, respondent concludes that the record clearly establishes that petitioner was operated primarily to furnish services or goods to its members.

Petitioner has essentially set forth a subjective test for ascertaining whether it is an organization described in section 277. We, however, agree with respondent that our inquiry under that section does not revolve around an analysis of the purpose, motivation, or intent underlying petitioner's formation. Rather, the statute denotes an objective test of whether the organization was operated primarily to furnish goods or services to its members. This standard refers to the manner in which petitioner operated and conducted its activities during the years in issue and entails a factual determination. See

*Associated Master Barbers & Beauticians of America v. Commissioner*, 69 T.C. 53, 71–72 (1977).

Viewing the record in this light, we concur with respondent's characterization of petitioner's activities. The facts indicate that the focus of petitioner's activities consisted of sponsoring approximately 10 major social functions a year such as golf tournaments, theater-dinner parties, football outings, dinner dances, and smokers. The expenditures for these events were approximately 13 to 14 times greater than the amounts of membership income which petitioner took in during the 2 years in issue. Contrary to petitioner's contentions, we are of the opinion that its members were directly benefited by its activities and that any benefit resulting to Armour was indirect or incidential. The fact that Armour may have had a business purpose in sponsoring petitioner in no way justifies the preferential tax treatment petitioner seeks here.

We are cognizant that petitioner also engaged in the retail sale of Armour's reject products. However, petitioner does not contend that these activities constituted the primary thrust of its operations. In any event, these activities functioned chiefly as a means of enabling petitioner's members to attend the various functions it sponsored at a reduced or no cost; the brochure Armour distributed states that the profits from petitioner's retail activities were collected with that specific goal in mind. In fact, Armour would not have permitted the profits from the sale of its reject products to be used in any other manner. Petitioner's operations are precisely the type which, as noted by the following Senate report, section 277 was intended to address:

In some cases, membership organizations, which also have business or investment income, serve their members at less than cost and offset this book loss against their business or investment income and as a result pay no income tax. * * *

* * * The purpose [of the provision] is to prevent membership organizations from escaping tax on business or investment income by using this income to serve its members at less than cost and then deducting the book "loss." [S. Rept. 91–552 (1969), 1969–3 C.B. 423, 471.]

See also the legislative history quoted in *Associated Barbers & Beauticians v. Commissioner, supra* at 72.

As a result, since petitioner was operated primarily to

furnish services and goods to its members, we hold that it is an organization described in section 277 and thus its deductions are limited to the extent of its membership income for each of the taxable years in issue.

## II.

Respondent also argues in the alternative that the membership expenditures are not deductible under section 162 either because petitioner was not carrying on a trade or business or because the expenditures were not ordinary and necessary in carrying on a trade or business. Although our resolution of the instant dispute under section 277 renders an analysis of these arguments unnecessary, we note that the present situation is similar to those presented in the decisions[4] which respondent has brought to our attention. Those cases would likewise support the result obtained under section 277.

*Decision will be entered for the respondent.*

---

[4]*Five Lakes Outing Club v. United States,* 468 F.2d 443, 445 (8th Cir. 1972); *Adirondack League Club v. Commissioner,* 55 T.C. 796 (1971), affd. per curiam 458 F.2d 506 (2d Cir. 1972); *Anaheim Union Water Co. v. Commissioner,* 35 T.C. 1072 (1961), affd. in part, revd. in part 321 F.2d 253 (9th Cir. 1963).