**INTERNATIONAL TRADING CO.,**
Petitioner-Appellant,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Respondent.

No. 12790.

United States Court of Appeals
Seventh Circuit.

March 7, 1960.

A. L. Skolnik, Milwaukee, Wis., for petitioner.

Charles K. Rice, Asst. Atty. Gen., Melvin L. Lebow, Lee A. Jackson, Harry Baum, Attys., Tax Division, U. S. Dept. of Justice, Washington, D. C., for respondent.

Before DUFFY and SCHNACKENBERG, Circuit Judges, and STECKLER, District Judge.

STECKLER, District Judge.

This is a petition for review of the decision of the Tax Court of the United States determining deficiencies in the petitioner's income tax for its taxable years ending August 31, 1951, and August 31, 1952.

The issue before this court is whether the Tax Court erred in disallowing a portion of the maintenance expenses and depreciation claimed by the corporate taxpayer under § 23(a) (1) (A) and (l) (1)

and (2) of the Internal Revenue Code of 1939.[1]

The Tax Court found and concluded that although certain residential property owned by the corporation at Beaver Lake, Wisconsin, some thirty miles from Milwaukee, may have been used at times for entertaining, in the taxable years ending in 1951, 1952 and 1953, it was maintained primarily for the personal benefit of the stockholders and had little or no business use.

The taxpayer, International Trading Co., is a Wisconsin corporation. In the fiscal years ended in 1948 through 1952, the corporation was engaged in the brewery supply business, and sold containers on a commission basis. The corporation also held real estate and collected rents therefrom. In the years 1950 and 1951, it was also engaged in licensed warehousing. In each of the years involved, the officers of the corporation were Michael Shapiro, Julius Rubin, Bernard Libowsky and Jack LaKam, the latter three being sons-in-law of Michael Shapiro. In the taxable years ending August 31, 1951 and August 31, 1952, all of the stock in the corporation was held in the names of Doris Libowsky, Lillian LaKam and Beatrice Rubin, daughters of Michael Shapiro; Cynthia Libowsky, Nancy Libowsky, Patricia LaKam, Bruce LaKam, David Rubin and Harley Rubin, grandchildren of Michael Shapiro; and by Michael Shapiro, Beatrice Rubin, Lillian LaKam and Doris Libowsky, as trustees of a voting trust for the benefit of the grandchildren of Michael Shapiro.

The parties stipulated in the proceedings before the Tax Court that the Beaver Lake property was purchased by the taxpayer in 1944 for the sum of $23,875.36, but the record shows that the corporation was not organized until May 19, 1946. The buildings on the property were remodeled and new buildings erected, making the property usable for summer residences and entertainment. The costs of additions and improvements prior to August 31, 1952, amounted to $344,953.62, including boating equipment in the amount of $3,082.50, landscaping in the amount of $42,564.66, and furniture and fixtures in the amount of $58,569.46. The property included a large residence consisting of living room and dining room combination, three bedrooms, kitchen, bathroom, two washrooms, and porch; a small house, consisting of two bedrooms, living room, kitchen, and bathroom; one apartment located over a boat house, consisting of two bedrooms, living room, kitchen, breakfast room and bath; one small dwelling house, consisting of four bedrooms, two baths, and a kitchen which had attached to it a community entertainment room with complete facilities for entertaining large groups; and at a lower level of that house, several dressing rooms with showers for guests and a rest room; a guest house capable of accommodating six people; a horse stable with caretaker's loft above; a boat house; a rock garden; a playground; a floodlighted tennis court; and a small screen house.

The large house was occupied by Michael Shapiro and his wife for about three

1. The pertinent parts of the Section read as follows:

"§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:

"(a) [As amended by § 121(a), Revenue Act of 1942, c. 619, 56 Stat. 798] Expenses.

"(1) Trade or business expenses.

"(A) In general. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *.

* * * * *

"(1) [As amended by § 121(c) of the 1942 Act] Depreciation. A reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

"(1) of property used in the trade or business, or

"(2) of property held for the production of income."

(26 U.S.C.A. § 23.)

months during each summer in 1950, 1951 and 1952. The small house was occupied by Jack LaKam and his family consisting of his wife and two small children during the years 1950, 1951 and 1952 for periods of about nine or ten weeks. The apartment above the boat house was occupied by Ben Libowsky and his family consisting of his wife and three small children during the years 1950, 1951 and 1952 for similar periods. The small dwelling house was occupied for similar periods by Julius Rubin and his family consisting of his wife and two small children during the years 1950 and 1951, and three small children during the year 1952.

During the years 1950, 1951 and 1952, when the premises were occupied by the above-named individuals and their families, they paid the following as rental to the corporation: Michael Shapiro, $3,600; Julius Rubin, $2,400; Jack LaKam, $1,200; and Ben Libowsky, $1,200. The Tax Court found that the fair rental value of such premises for a three-month summer period was not in excess of the amounts paid.

During its fiscal years ended August 31, 1951, 1952 and 1953, the taxpayer incurred expenses for the upkeep and maintenance of the Beaver Lake property, in addition to interest expenses and taxes, for caretaker salaries, repairs and maintenance, insurance, light and heat, and stable supplies. These expenses amounted to $14,294.15 for 1951, $15,219.96 for 1952, and $18,227.28 for 1953. In addition to the expenses for upkeep and maintenance, the taxpayer deducted depreciation on the Beaver Lake property in its 1951, 1952 and 1953 federal income tax returns in the amounts of $20,002.87, $19,761.90 and $20,021.00, respectively. The combined expenses for maintenance and depreciation thus amounted to $34,297.02 for 1951, $34,981.86 for 1952, and $38,248.28 for 1953.

The taxpayer attempted to sell the Beaver Lake property in 1950, and listed it for sale in the summer of 1951 for $200,000. An offer of $105,000 was received and rejected.

The taxpayer's merchandise sales for the years ended August 31, 1951, 1952 and 1953 amounted to $362,919.73, $17,834.51 and $1,615.13, respectively.

In the fiscal year ended August 31, 1951, the corporation collected rents in the amount of $75,867.04, and in the year ended August 31, 1952, in the amount of $18,533.30.

With respect to the Beaver Lake property, the Commissioner allowed the taxpayer to deduct $9,000 in each of the taxable years, that is, to the extent of the aggregate rent received from its stockholders and included in the corporation's income, disallowing all other deductions for maintenance and upkeep and depreciation. Subsequently, the Tax Court, affirming in part the Commissioner's action found that the taxpayer could not deduct the maintenance expenses and depreciation on the Beaver Lake property for its 1951 to 1953 fiscal years in excess of the deductions allowed by the Commissioner, because the property had little or no business use and was held primarily for the personal use of the taxpayer's stockholders.

The decisions of the Tax Court are to be reviewed in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury. The findings and decision of the Tax Court must be accepted as correct unless, of course, they are not based upon substantial evidence or if the proper rules of law are not applied.

Although the Tax Court simply found that the Beaver Lake property in the taxable years was maintained primarily for the personal benefit of the stockholders and had little or no business use, it did not specifically find that the claimed expenses were not *incurred in the taxpayer's trade or business* or with respect to *property held for the production of income*. From a reading of the Tax Court's Memorandum Findings of Fact and Opinion, it is implicit that that court found that the property was not used in the trade or business of the taxpayer, nor held for the production of income,

within the meaning of § 23(a) (1) (A), and (*l*) (1) and (2). The question presented here is whether the Tax Court upon the factual record before it, correctly so found.

 This court is mindful of the rule that substance controls over form in the application of Internal Revenue laws which are regarded as having a practical, not theoretical application. Western Maryland Ry. Co. v. Commissioner, 4 Cir., 1929, 33 F.2d 695, 698. As the Supreme Court has repeatedly held, it is the underlying essence of a transaction that determines its taxability. Helvering v. Tex-Penn Oil Co., 1937, 300 U.S. 481, 493, 57 S.Ct. 569, 81 L.Ed. 755; Bowers v. Lawyers' Mortgage Co., 1932, 285 U.S. 182, 52 S.Ct. 350, 76 L.Ed. 690; United States v. Phellis, 1921, 257 U.S. 156, 168, 42 S.Ct. 63, 66 L.Ed. 180; United States v. Merchants Nat. Trust & Savings Bank, 9 Cir., 1939, 101 F.2d 399. It is the origin and nature and not the legal form of the expense sought to be deducted that determines the applicability of the statute. Interstate Transit Lines v. Commissioner, 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607, rehearing denied 1943, 320 U.S. 809, 64 S.Ct. 26, 88 L.Ed. 489.

In the Tax Court, the petitioner's contentions were that it purchased and maintained the property as an investment and for the purpose of entertaining its customers and suppliers in connection with its brewery supply business. Thus, it argued, the maintenance expenses and depreciation were incurred in its trade or business and in maintaining the investment in good condition as a high grade piece of resort property.

Here on appeal the petitioner does not press the theory that the Beaver Lake property was purchased principally for the entertainment of customers and suppliers. Rather, it now posits its case on the proposition that it was engaged in the business of holding real estate and collecting rents therefrom, and that it received a rental income from the Beaver Lake property of an amount equal to its fair rental value; that this, as a matter of law, entitles petitioner to the deductions claimed. Further, in oral argument, petitioner's counsel argued that there is no such thing as a non-business activity of a corporation. With respect to corporations, as distinguished from individuals, petitioner urges there is a "statutory assumption" that transactions entered into by corporations are in connection with their business, and, as a corollary, a profit motive is assumed.

It is apparent from petitioner's argument that it contends it is entitled to all maintenance expenses and depreciation claimed on the Beaver Lake property, without regard to its actual use, merely because the respondent allowed the claimed deductions, both as to business expenses and depreciation, to the extent of the rentals of $9,000 per year received from the shareholders. Petitioner states that this allowance is tantamount to an acknowledgment that the deductions were allowable items to the full extent claimed. It says: "Presumably, if more rent had been collected, more of these deductions claimed would have been allowed, and if rent equal to or exceeding the deductions would have been received, all the deductions would have been allowed." Petitioner states there is no provision in the Code which authorizes this treatment or limits the deductions to the amount of rent received. At first blush this argument appears to be plausible. However, it overlooks the exclusion of deductions of expenses incurred in purely personal pursuits, or in respect to property held primarily for personal use.

Section 23(a) (1) (A) and corresponding sections in the earlier revenue acts, authorize the deduction of all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.

 The statute should be broadly construed to facilitate business, but the statute does not make deductible all expenses of every business transaction, whether of an individual, Higgins v. Commissioner, 1941, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783; United States

v. Pyne, 1941, 313 U.S. 127, 61 S.Ct. 893, 85 L.Ed. 1231, or whether of a corporation, Greenspon v. Commissioner, 8 Cir., 1956, 229 F.2d 947; Interstate Transit Lines v. Commissioner, supra; A. Giurlani & Bro., Inc. v. Commissioner, 9 Cir., 1941, 119 F.2d 852.

■ A corporation is normally deemed to be engaged in a "trade or business"; however, to the extent that it is operated solely for the pleasure or recreation of its stockholders, it is not engaged in a "trade or business." 4 Mertens, Law of Federal Income Taxation § 25.08 (Zimet & Diamond Rev.1954); American Properties, Inc. v. Commissioner, 1957, 28 T.C. 1100, affirmed 9 Cir., 1958, 262 F.2d 150.

 ■ All deductions, whether with respect to individuals, or corporations, are a matter of legislative grace, and unless the claimed deductions come clearly within the scope of the statute, they are not to be allowed. The burden to make that showing rests upon the taxpayer. Deputy v. duPont, 1939, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416; Bradley v. Commissioner, 7 Cir., 1950, 184 F. 2d 860; Greenspon v. Commissioner, supra.

■ Whether activities of a taxpayer amount to "carrying on a trade or business" within the statute is largely a matter of degree, and for a determination requires an examination of the facts in each case. There are certain factors of evidentiary importance which must be regarded in determining whether a taxpayer is engaged in "trade" or "business" or "in carrying on a trade or business" within the meaning of the statute. Prominent among these factors are the profit motive and the presence of businesslike policies, especially such as those customarily evidenced by the taxpayer in other business activities. "In order that the taxpayer's activities may constitute the carrying on of a 'trade or business,' he need not have a reasonable expectation of a profit. He must, however, initiate or conduct the enterprise in good faith with an intention of making a profit or of producing income. Thus, the profit factor is really only significant in so far as it affords a means of distinguishing between an enterprise carried on in good faith as a 'trade or business' and an enterprise merely carried on as a hobby." 4 Mertens, supra, p. 18. This principle can be applied equally to the case at hand in determining whether the taxpayer's Beaver Lake property had little or no business use and was held primarily for the personal use of the taxpayer's stockholders. American Properties, Inc. v. Commissioner, supra.

The taxpayer's general business was that of a brewery supplier. Its largest customer was the Schlitz Brewing Company. There is no evidence in the record to indicate that the Beaver Lake property was ever maintained to be rented at a profit. Indeed the entire record indicates the contrary. The taxpayer's board of directors and its employees never attempted to rent the property to others than Michael Shapiro's family. The property never was advertised for rent nor was it placed on the market for that purpose. The record is completely barren of any evidence indicating commercial activity with respect to the resort. In fact, outsiders regarded the property as a family estate.

The evidence shows that the taxpayer expended in purchasing and improving the property the sum of $368,828.98. Each year it expended substantially more on the property than the rent it received from the members of the family. In some years it expended more than twice as much as it received by way of such rents. There is no evidence of the terms of any lease between the taxpayer and its shareholders. Still, the shareholders were entitled to occupy the property at will and at any time to their liking; and there is no evidence of any dividends having been paid the shareholders.[2]

2. "Whether the Tax Court erred in overruling the Commissioner's determination that the benefits otherwise received from the use of the property were taxable to the individual shareholders is an issue not here presented." Resp.'s Brief, p. 23, n. 9.

Another factor that looms largely as to whether this was a business activity, is that the Beaver Lake property was not economically integrated with any other commercial property of the taxpayer. All of the taxpayer's rental income other than that received from its stockholders in connection with the Beaver Lake property was derived from commercial properties in the City of Milwaukee. Its commercial rent receipts came from the property that it originally acquired or bought for its general business of dealing in brewery supplies but by reason of business conditions, could not use for that purpose. Even the testimony of Michael Shapiro indicates no expectation of profits from rents on the Beaver Lake property. It was his testimony that the property was purchased primarily for the purpose of entertaining customers and suppliers in connection with the brewery supply business. As heretofore stated, with respect to the years here in question, that theory is no longer urged. In passing it should be said there is no substantial evidence that the property was used for business entertainment in these years nor in earlier years. The living facilities on the premises were kept heated during the winter months. The shareholders were entitled to, and did at times, occupy the premises during the winter. It was held, as the Tax Court properly found, for the personal benefit of the stockholders and at the expense of the corporation. The evidence before the Tax Court clearly indicated a history of continuous losses with no hope of profit from the alleged renting business in so far as the Beaver Lake property was concerned.

Since we agree that the Tax Court was correct in its findings and conclusion that the Beaver Lake property was maintained in the taxable years here in question primarily for the personal benefit of the stockholders, and that it had little or no business use, it follows that the claimed expenses under § 23(a) (1) (A) were not ordinary and necessary expenses incurred in carrying on the taxpayer's trade or business.

"Ordinary and necessary" expenses within the meaning of the statute are all ordinary and necessary expenses directly connected with or proximately resulting from, carrying on any trade or business. Northern Trust Co. v. Campbell, 7 Cir., 1954, 211 F.2d 251; Mills Estate, Inc. v. Commissioner, 2 Cir., 1953, 206 F.2d 244; Friedman v. Delaney, 1 Cir., 1948, 171 F.2d 269, certiorari denied, 1949, 336 U.S. 936, 69 S.Ct. 746, 93 L.Ed. 1095; Deputy v. duPont, supra; Welch v. Helvering, 1933, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212. "Ordinary," as the term is used in the statute, has the connotation of normal, usual, or customary in the type of business involved. Deputy v. duPont, supra, 308 U.S. at pages 494–496, 60 S.Ct. at pages 366–368; Hales-Mullaly, Inc. v. Commissioner, 10 Cir., 1942, 131 F.2d 509, 511; A. Giurlani & Bro., Inc. v. Commissioner, supra. The word "necessary" has been construed to mean "appropriate and helpful." See Welch v. Helvering, supra, 290 U.S. at page 113, 54 S.Ct. at page 9; Commissioner v. Heininger, 1943, 320 U.S. 467, 471, 64 S.Ct. 249, 88 L.Ed. 171.

Even though the evidence shows that the taxpayer had rental income from its commercial properties in Milwaukee, and to that extent was engaged in carrying on a rental business for profit, nevertheless, as respects the Beaver Lake property, the expense of maintaining it, in view of the evidence, cannot be said to be an "ordinary" and "necessary" expense within the meaning of § 23(a) (1) (A). Where, as here, the property was purchased and improved with the knowledge that it would not earn a profit, and was not expected to earn a profit, but was maintained primarily for the personal benefit of the families of the corporation's stockholders, without a corresponding benefit to the corporation, as to the deficit between rents received and expenses incurred (see Interstate Transit Lines v. Commissioner, 8 Cir., 1942, 130 F.2d 136, 139, affirmed 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607, supra), the expenses of maintaining it were not

"ordinary" and "necessary" expenses incurred in the taxpayer's rental business.

True, the Tax Court found that under the circumstances the fair rental values of the premises for the time the families made use of the property were not in excess of the rentals they paid. Still this does not overcome the court's finding that the property had little or no business use and was maintained primarily for the personal use of the stockholders, and thus, implicitly, any expenses incurred in its maintenance were not in connection with its trade or business.

We conclude, then, with respect to the claimed deductions under § 23(a) (1) (A), on the evidence before the Tax Court, that the taxpayer failed to satisfy the burden of clearly showing its right to the deductions for maintenance expenses in the fiscal years 1951 and 1952.

The petitioner likewise failed to satisfy its burden of showing that it was entitled to the depreciation deductions under § 23(l).

Section 23(l) allows depreciation deductions only with respect to (1) property used in the taxpayer's trade or business or (2) property held for the production of income. What we have already said with regard to the taxpayer's failure to satisfy the burden of proving its entitlement to maintenance expense deductions under § 23(a) (1) (A) applies equally to its claim for depreciation deductions under § 23(l) (1).

Moreover, it is well settled that a taxpayer cannot take depreciation deductions on property to the extent that it is devoted to personal purposes, whether those purposes are personal benefits to the stockholders of a corporate taxpayer or whether they are personal benefits to an individual who is the taxpayer. Bradley v. Commissioner, supra; Greenspon v. Commissioner, supra; American Properties, Inc. v. Commissioner, supra; Leadbetter v. Commissioner, 1939, 39 B.T.A. 629. Here again, as in the case of all deductions, allowance for depreciation is a matter of legislative grace. Detroit Edison Co. v. Commissioner, 6

Cir., 1942, 131 F.2d 619, 622, affirmed 1943, 319 U.S. 98, 63 S.Ct. 902, 87 L.Ed. 1286.

Nor will it be assumed that property was held for the production of income; it is the taxpayer's burden to show that the property was actually held primarily to produce income. Estate of Fuller v. Commissioner, 1947, 9 T.C. 1069, 1076, affirmed per curiam 3 Cir., 1948, 171 F.2d 704, certiorari denied 1949, 336 U.S. 961, 69 S.Ct. 892, 93 L.Ed. 1113; Morton v. Commissioner, 2 Cir., 174 F.2d 302, 304, certiorari denied 1949, 338 U.S. 828, 70 S.Ct. 77, 94 L.Ed. 503.

Whether the Beaver Lake property was "held for the production of income" within the meaning of subsection (l) (2) of § 23, presents a question of greater complexity, the answer to which is more elusive than the answer to the other questions dealt with herein. The answer depends largely upon the taxpayer's intent, and, of course, it is difficult to prove what existed in a taxpayer's mind at a given time. Therefore, it is often necessary to prove such intent by acts and conduct. Also, intent is a question of fact and its ascertainment must be left to the finder of facts. If there is any reasonable basis in fact in the evidence to support the Tax Court's finding as to whether the property was, or was not held for the production of income, such finding must be sustained. It is not for a court of review to weigh the evidence.

In this case, as we have already indicated, the record indicates a history of continuous losses with no expectations of a profit from the renting of the Beaver Lake property. It is apparent that the property was acquired by part of the shareholders prior to the time the taxpayer was organized as a corporation, and that some of the improvements were made prior to the time the corporation acquired it. At the time the property was acquired, it was a personal residential property. From that time on, improvements were made for the personal benefit of the shareholders. Playgrounds

for the children, lighted tennis courts, boating facilities, et cetera, were provided. All the while, the property was withheld from the rental market.

Petitioner bases a part of its claim for depreciation expenses on the ground that the property was held as an investment and that the expenses were ordinary and necessary in order to preserve it as a high grade piece of property in case it should later wish to sell it at a profit. Also, that in 1951 it placed the property in the hands of a real estate broker in order to sell it. These arguments, although quantitative, fall far short in the taxpayer's attempt to convert the Beaver Lake property into property held for the production of income within the meaning of the statute. This is especially so when the taxpayer's transactions with respect to the property are viewed as a whole, and not fragmentized for convenient and self-serving purposes.

In view of the foregoing evidentiary factors, the Tax Court committed no error in finding that the Beaver Lake property was maintained primarily for the personal benefit of the taxpayer's shareholders and, implicitly, that it was not held for the production of income within the meaning of subsection (l) (2) of § 23.

It was not necessary for the Commissioner or the Tax Court to disallow the claimed deductions by reason of the prohibition of § 24 of the Internal Revenue Code, 26 U.S.C.A. § 24, on the ground they constituted "personal * * * expenses." For unless the expenses claimed conveniently came within § 23(a) (1) (A) and (l) (1) and (2), they were not deductible. To have done otherwise would have disregarded the explicit restrictions of § 23 confining deductible expenses solely to outlays in carrying on the taxpayer's trade or business or in respect to property used in the trade or business or held for the production of income. McDonald v. Commissioner, 1944, 323 U.S. 57, 65 S.Ct. 96, 89 L.Ed. 68.

[18] In certain cases, an alloca may be permissible. The taxpaye this case made no allocation and offered no evidence upon which the Commissioner could make a proper allocation, either with respect to business expenses or claims for depreciation. When expenditures are incurred covering items which are non-deductible as business expenses to the taxpayer, and also items which constitute a part of the carrying on of a taxpayer's business, it is incumbent upon the taxpayer to introduce evidence upon which a reasonable allocation of charges between the two types of items can be made; otherwise no deduction will be allowed. Interstate Transit Lines v. Commissioner, supra; Nowland v. Commissioner, 4 Cir., 1957, 244 F.2d 450, 454; Harden Mortgage Loan Co. v. Commissioner, 10 Cir., 137 F.2d 282, 284, certiorari denied 1943, 320 U.S. 791, 64 S.Ct. 206, 88 L.Ed. 476. Cf. Estate of Fuller v. Commissioner, supra; Chesbro v. Commissioner, 2 Cir., 1955, 225 F.2d 674, certiorari denied 1956, 350 U.S. 995, 76 S.Ct. 544, 100 L.Ed. 860. The petitioner likewise failed to show any basis for an allocation of claimed depreciation. Morton v. Commissioner, supra, 174 F.2d at page 304; Estate of Fuller v. Commissioner, supra; Greenspon v. Commissioner, supra.

Notwithstanding the taxpayer's failure to establish a basis for a proper allocation, the Commissioner, as previously stated, allowed deductions covering both maintenance expenses and depreciation in the aggregate amount of $9,000, an amount equal to the income received from the Beaver Lake property for the shareholders' use of it in each of the taxable years in question. Thus, even though there was no reasonable basis to hold that the property was held for the production of income, or that it was used in the taxpayer's trade or business, the Commissioner allowed a complete setoff against the total amount of income received from the property. Such a generous treatment of the claimed deductions was more than the taxpayer was entitled

to on the strength of the showing it made.

We therefore conclude that the finding of the Tax Court is supported by reasonable and substantial evidence and there is warrant in the record and a basis in law for the Tax Court's conclusion that the expenses for maintenance of the Beaver Lake property were not incurred in the taxpayer's trade or business within the meaning of § 23(a) (1) (A), and likewise that the depreciation claimed was not on property used in the taxpayer's trade or business nor on property held for the production of income within the meaning of subsection (l) (1) and (2) of that section.

The decision of the Tax Court is affirmed.