LEROY AND SALLY BLOOMBERG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; LEROY BLOOMBERG, M.D., INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bloomberg v. Commissioner
Docket Nos. 9739-76; 9743-76
United States Tax Court
T.C. Memo 1979-50; 1979 Tax Ct. Memo LEXIS 475; 38 T.C.M. (CCH) 206; T.C.M. (RIA) 79050; February 8, 1979, Filed *475 Held, corporate petitioner failed to prove automobile expenses in excess of amounts allowed by respondent. Held further, corporate petitioner incurred a $ 25 drug and medical supplies expense in excess of amounts allowed by respondent. Held further, individual petitioners failed to prove depreciation expenses in excess of amounts allowed by respondent. Held further, individual petitioners failed to prove that they were entitled to an investment credit in excess of the credit allowed by respondent. Held further, personal expenses paid by the corporation resulted in constructive dividends to its sole shareholder. David M. Buda, for the petitioners. Andrew M. Winkler, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent, on October 8, 1976, issued a statutory notice to Leroy B. Bloomberg and Sally L. Bloomberg in which he determined deficiencies in their Federal income taxes for their calendar years *478 1971, 1972 and 1973 as follows: Year
Deficiency
1971
$ 2,381.74
1972
2,933.74
1973
1,560.31
On the same date he issued a statutory notice to Leroy Bloomberg, M.D., Inc. in which he determined deficiencies in its corporate Federal income tax for its fiscal years ended May 31, 1972 and May 31, 1973 in the amounts of $ 1,590.53 and $ 1,128.81, respectively. Respondent subsequently amended his answer to petitioners Leroy Bloomberg and Sally Bloomberg in order to increase the claimed deficiencies for their taxable years 1972 and 1973 to $ 2,972.44 and $ 1,599.96, respectively. These cases were consolidated for purposes of trial, briefing and opinion. After concessions by petitioners the following issues remain for our determination: (1) whether petitioner Leroy Bloomberg, M.D., Inc. incurred allowable automobile expenses for 1972 and 1973 in excess of the amounts determined by respondent, (2) whether petitioner Leroy Bloomberg, M.D., Inc. incurred allowable expenses for 1972 for drugs and medical supplies in excess of the amounts determined by respondent, (3) whether petitioners Leroy Bloomberg and Sally Bloomberg are entitled to a depreciation expense deduction *479 for 1971, 1972 and 1973 in excess of the amount determined by respondent, (4) whether petitioners Leroy Bloomberg and Sally Bloomberg are entitled to an investment credit for 1971 in excess of the amount determined by respondent, (5) whether the amounts disallowed by respondent as automobile and drug and medical expenses to Leroy Bloomberg, M.D., Inc. are includible in the income of its sole shareholder, Leroy Bloomberg. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Leroy Bloomberg (hereinafter Bloomberg) and Sally Bloomberg (hereinafter Mrs. Bloomberg) were married and resided in Newark, Ohio at the time of filing the petition herein. They filed joint Federal income tax returns for the taxable years 1971, 1972 and 1973 with the district director of internal revenue, Cincinnati, Ohio. Bloomberg is an ophthalmologist. Leroy Bloomberg, M.D., Inc. (hereinafter the corporation) is an Ohio corporation with offices in Newark, Ohio. Bloomberg is the corporation's sole shareholder. The corporation's Federal income tax returns for its taxable years ended *480 May 31, 1972 and May 31, 1973 were filed with the district director of internal revenue, Cincinnati, Ohio. During these years Mrs. Bloomberg was employed by the corporation as a nurse, office manager and bookkeeper. Throughout its 1972 and 1973 tax years the corporation provided Bloomberg with an automobile for his exclusive use and paid all of the expenses incurred in connection therewith. Such automobiles were successively leased by the corporation from an automobile leasing company for this purpose. The corporation also provided Mrs. Bloomberg with an automobile for her exclusive use and paid all of the expenses incurred in connection therewith. The automobiles provided for Mrs. Bloomberg were leased from her by the corporation for this purpose. Both Bloomberg and Mrs. Bloomberg used the automobiles provided to them by the corporation for their personal driving. No other cars were owned by them during this period. The first automobile was acquired by Mrs. Bloomberg in June of 1971 and registered in her name on June 25, 1971. She transferred that automobile to her son in May of 1972, registering such transfer on May 23, 1972. This car was leased to the corporation on *481 September 16, 1971. The second automobile was acquired by Mrs. Bloomberg in May of 1972 and registered in her name on May 25, 1972. This car was leased to the corporation on July 1, 1972. Mrs. Bloomberg prepared logs in support of the claimed business mileage. The entries were not made contemporaneously, but reconstructed from Mrs. Bloomberg's memory. With respect to Mrs. Bloomberg's logs she entered a flat 11 mile figure for each of the days worked then added mileage when errands were run. With respect to Bloomberg's logs she included the distance he traveled between his residence and the corporate office. Bloomberg worked about 2 hours per day at home in a room set aside for that purpose. Bloomberg's home was a little over 3 miles from his office. The distance between his office and the hospital was 3-1/2 to 4 miles, between his office and bank was 1 mile and between his office and the post office was 2 miles. When he did the banking he customarily did it on his way home from the office. Respondent allowed $ 1,755.09 of the $ 7,259.66 claimed as automobile expense by the corporation for 1972 and $ 1,502.49 of the $ 5,850.55 claimed as automobile expense by the corporation *482 for 1973 which he calculated as follows: AUTOMOBILE EXPENSE COMPUTATION BUSINESS
PERSONAL
TOTAL
ALLOWED
ALLOWED
Fiscal Year Ended 5/31/72
1971 Plymouth - Sally L. Bloomberg
Mileage Reading 5/22/72 11,444
Mileage Reading 8/23/71 2,858
Mileage Reading 9 months 8,586
Mileage Reading per month 954
Mileage Reading for 12 months
11,444
1,521
9,923
Percentage
100%
13%
87%
Expense
$ 2,487.46 $ 323.41
$ 2,164.05
1971 Imperial - Leroy B. Bloomberg
Mileage Reading 2/9/72 15,819
Mileage Reading 8/8/71 6,091
Mileage Reading 8 months 9,728
Mileage Reading per month 1,216
Mileage Reading for 11 months
13,376
3,982
9,394
Percentage
100%
30%
70%
Expense
$ 4,772.19
$ 1,431.68
$ 3,340.51
TOTAL
$ 7,259.66
$ 1,755.09
$ 5,504.57
Fiscal Year Ended 5/31/73
1972 Plymouth - Sally L. Bloomberg
Mileage Reading 8/10/73 12,120
Mileage Reading 10/31/72 6,257
Mileage Reading 10 months 5,863
Mileage Reading per month 586
Mileage Reading for 12 months
7,035
957
6,078
Percentage
100%
14%
86%
Expense
$ 1,579.65 $ 221.15
$ 1,358.50
1972 Imperial - Leroy B. Bloomberg
Mileage Reading 5/24/73 13,623
Mileage Reading 8/30/73 5,510
Mileage Reading 9 months 8,113
Mileage Reading per month 901
Mileage Reading for 11 months
9,915
2,875
7,040
Percentage
100%
30%
70%
Expense
$ 4,270.90
$ 1,281.34
$ 2,989.56
TOTAL
$ 5,850.55
$ 1,502.49
$ 4,348.06
*483 He further determined that the Bloombergs' allowable deductions for automobile depreciation on the two cars leased by Mrs. Bloomberg to the corporation for their taxable years 1971, 1972 and 1973 were overstated on their returns. The corporation claimed a drug and medical expense of $ 9,080.17 for its taxable year 1972. Of that amount respondent disallowed $ 259.78. This disallowance relates to the following items: Drug and Medical Expense Disallowed Item
Amount
Cigars $ 6.54
Cigars
6.54
Cigars
6.54
Cigars and Lighter
10.78
Film and Flashbulbs
9.09
Cigars
7.06
Cigars
7.06
Cigars
13.54
Cigars
7.95
Case of Pampers
16.60
Magazines, etc.
3.74
Clearasil, Breath, etc.
6.82
Disposable Blades
7.84
Case of Overnight Pampers
17.85
Gift Set
4.18
Cepacol, etc.
7.07
Film, etc.
5.56
Right Guard, etc.
10.12
Wrapping Paper, Film, etc.
11.26
Emery Boards, etc.
1.09
Pampers (1732 Stonewall)
18.48
Aspirin
2.51
Spray Cologne
3.54
Cigars
7.74
Candy
5.50
Pampers, etc.
25.73
Tampax, Garden set, etc.
3.05
Aspirin, Cepacol, etc.
9.12
Hand Lotion, Razor Blades, etc.
10.84
Clearasil, etc.
5.00
Anti Rust
1.31
$ 260.05 [1]
Per Agent
$ 259.78
*484 Respondent further determined that Bloomberg received additional income during 1971, 1972 and 1973 with respect to the automobile and the drug and medical expenses disallowed to the corporation as personal expenses of its sole shareholder. The Bloombergs concede that the disallowed amounts would constitute additional taxable income in the years and amounts determined by respondent if we find that such expenses constitute nondeductible, personal expenses. For his taxable year 1971 Bloomberg claimed an investment credit in the amount of $ 1,546.62 based on his purchase of equipment for a total cost of $ 22,094.70 from White-Haines Optical Company. This total cost was calculated as follows: DELIVERY
TOTAL ITEM
DATE
COST
DISCOUNT *
TAX *
POSTAGE *
COST *
Teaching mirror
1/13/71 $ 28.00 $ 2.80 $ 1.01 $ $ 26.21
Berkeley tonography unit
11/12/70
1,965.00
78.60
2,043.60
Goldman 3 mirror lens
11/10/70
( 95.00)
( 3.80)
( 98.80)
B & L projector screen
1/18/71
18.00
Auto plot charts (2)
1/18/71
4.00
2.20
.80
.68
21.28
Brewer stools (2)
2/1/71
69.20
H-Ruby lens for AO slit lamp
2/1/71
55.00
12.42
4.48
3.43
119.69
Projecto-O-charts, stand &
slides
1/15/71
460.00
46.00
16.56
3.04
433.60
NC reliance unit
11/5/70
820.00
Reliance chairs (2)
11/5/70
2,304.00
312.40
112.46
2,924.06
Vigor H & S staking, set
10/29/70
47.50
47.50
WA spot retinoslope
10/30/70
37.00
WA rechargeable handle
10/30/70
27.00
6.40
2.30
59.90
Goldman small 3 mirror lens
10/30/70
75.00
3.00
78.00
Tura mirror
10/27/70
45.00
A, O, viewing lens 1-4D
10/27/70
45.00
9.00
3.24
84.24
Drager tonometer
10/28/70
750.00
30.00
780.00
Zig-zag table - Rosewood
10/27/70
153.50
Fitting chairs - Rosewood (2)
10/27/70
135.60
Stack table - Rosewood
10/27/70
78.00
Frame bar - Rosewood (2)
10/27/70
254.00
Frame bar - Rosewood
10/27/70
90.00
71.11
25.60
665.59
W-Aspot retinoscope
10/27/70
37.00
W-A rechargeable handle (2)
10/27/70
50.00
W-A ophtalmoscope
10/27/70
50.00
W-A desk unit
10/27/70
36.00
Reliance adapter bushing
10/27/70
15.00
Mayo instrument stand
10/27/70
51.45
23.95
8.62
224.12
B-W 4 dot test
10/8/70
10.50
Ophthalmodynamometer
10/8/70
50.00
Amsler charts
10/8/70
18.50
Distometer
10/8/70
17.50
9.65
3.47
90.32
Golden prism set
10/8/70
62.00
GM rod & occluder
10/8/70
7.00
HRR, H.O. color test
10/8/70
28.50
Timus stereo fly test
10/8/70
24.00
12.15
4.37
113.72
Burton hand held lamp
10/12/70
54.00
Measuring magnifier
10/12/70
15.33
Round screens (2)
10/12/70
35.00
Contact lens accessory (2)
10/12/70
19.90
Lenscometer attachment
10/12/70
30.00
15.52
5.59
144.30
Goden prism bar set
10/2/70
65.00
Exophthalmometer
10/2/70
80.00
14.50
5.22
135.72
B & L green's refractor
9/29/70
1,525.00
Keratometer
9/29/70
795.00
R & L Xonix binocular indirect
9/29/70
420.00
B & L auto plot
9/29/70
575.00
B & L prof cabinet
9/29/70
140.00
345.50
124.38
3,233.88
Nikon vertexometer II
9/18/70
410.00
16.40
426.40
R-H frame warmer
10/12/70
29.95
29.95
Airfloat brewer stool (2)
10/27/70
175.90
Brewer stool (2)
10/27/70
81.20
Project-O-chart, floor stand
10/27/70
377.00
63.41
22.83
593.52
AO slit lamp - straight eye
10/16/70
1,900.00
AO slip lamp table glides
10/16/70
210.00
AO project-O-chart
10/16/70
377.00
248.70
89.53
17.31
2,345.14
Karlo table
10/12/70
56.92
Project-O-chart slides (3)
10/12/70
72.00
B & L ortho poise trial frame
10/12/70
120.00
24.89
8.96
232.99
Goldman 3 mirror gonio lens
10/12/70
95.00
Imported trial lens set
10/12/70
185.00
11.20
291.20
Selectomatic stool (2)
6/16/71
159.00
15.90
5.72
148.82
AO slit lamp straight eye tubes
3/15/71
1,955.00
AO slit lamp table w/glides
3/15/71
210.00
216.50
77.94
15.06
2,041.50
Miscellaneous
1,000.00
1,000.00
Strasbismometer
119.00
4.76
3.17
126.93
Hyfractor
120.00
4.80
3.20
128.00
Brewer stool
34.60
3.45
1.25
.92
33.32
TOTAL
$ 19,265.05
$ 1,456.45
$ 669.29
$ 46.81
$ 18,524.70
Optical Company
7/1/71
3,570.00
3,570.00
TOTAL
$ 22,835.05
$ 1,456.45
$ 669.29
$ 46.81
$ 22,094.70
*485 Respondent disallowed all but $ 330.32 of the investment credit on the ground that such items were acquired during the period for which the credit was terminated. The allowed credit related to the following items: DELIVERY ITEM
DATE
COST
DISCOUNT
TAX
TOTAL COST
Selectomatic stool (2)
6/16/71 $ 159.00
$ 15.90
$ 5.72 $ 148.82
Miscellaneous
1,000.00
1,000.00
Optical Company
7/1/71
3,570.00
3,570.00
$ 4,729.00
$ 15.90
$ 5.72
$ 4,718.82
OPINION Issue 1. The Corporation's Automobile Expense
The first question before the Court is the proper amount of allowable automobile expense deductions for the corporation's taxable years 1972 and 1973 under section 162, I.R.C. 1954. That section provides a deduction for the ordinary and necessary expenses of a trade or business. However, section 262 restricts deductibility under section 162 to nonpersonal expenses. Sections 161 and 261. In support of the claimed expense the corporation submitted logs of the usage of the automobiles provided to Bloomberg and Mrs. Bloomberg. *486 The logs were prepared by Mrs. Bloomberg. She did not make contemporaneous entries, but rather reconstructed the mileage from memory. For the logs relating to the auto provided for her own use she entered a flat 11 mile figure as a matter of course for the days she worked, then added to that figure or errands run. The logs relating to the car provided for Bloomberg's use show a greater daily mileage figure, usually either 16-1/2 or 20-1/2 miles per day. Bloomberg's mileage included the distance traveled between his home and his office. Both Bloomberg's and Mrs. Bloomberg's mileage figures include trips to the post office and bank, thereby duplicating some of the mileage claimed, e.g., the weeks of January 9, 1972, October 22, 1972, and February 11, 1973 in the mileage records of each. Bloomberg testified that he did not use his automobile for long distance driving or for vacations because he did not like to drive. However, he further testified that he made monthly trips to Columbus for ophthalmology meetings (approximately 70 miles round-trip), monthly trips to Columbus to pick up office equipment, and twice or thrice weekly trips to Pataskala to visit his friend and business *487 advisor (approximately 60 miles round-trip); a total of 620 to 860 miles per month, on top of a 6 day 60-hour work week. We do not find his testimony to be credible. The expense of commuting between a taxpayer's home and his work is a personal expense. Fausner v. Commissioner,413 U.S. 838, 839 (1973). We find that Bloomberg would have made the trips between his home and office in any event and thus incurred no additional expense in traveling between his primary office and his home office. Mazzotta v. Commissioner,57 T.C. 427, 429 (1971), affd. 465 F.2d 1399 (2d Cir. 1972). Based on the facts and circumstances herein we find that the corporation has failed to prove that it incurred automobile expenses attributable to business mileage in excess of amounts allowed by respondent. Welch v. Helvering,290 U.S. 111, 115 (1933). We find further that Bloomberg's income should be increased to correspond with this holding. Issue 2. The Corporation's Drug and Medical Expense
The second issue before the Court is the proper amount of allowable expenses incurred by the corporation with respect to drugs and medical *488 supplies for its 1972 taxable year. At the outset we note that of the items disallowed only the cost incurred with respect to the purchase of aspirin is properly termed a drug or medical expense. The remaining items may give rise to an ordinary and necessary expense, but do not support a deduction for drugs or medical expense. Bloomberg testified that the film and flash bulbs were used for before and after photographs of patients undergoing surgery and that some of the supplies in issue such as hand lotion were used during the course of business. However, it stretches our imagination that an ophthalmologist would use $ 78.66 worth of Pampers, $ 73.75 worth of cigars and lighters, a garden set, Clearasil and a gift set in the ordinary course of business. It is possible that a portion of the expenses incurred is legitimate. However, because a number of the items claimed border on the ridiculous, the obvious overreaching casts doubt on the propriety of allowing a deduction for any of the items claimed. After consideration of all the facts and circumstances we find that the corporation incurred incidental ordinary and necessary business expenses of $ 25 in 1972 with respect to the *489 items in issue. We find further that Bloomberg's income should be increased to correspond with this holding. Issue 3. Bloombergs' Depreciation Expenses
The Bloombergs claimed automobile depreciation for their 1971, 1972 and 1973 taxable years. They have presented no evidence in support of this deduction arguing on brief that allowable depreciation should be commensurate with the percentage of business use of the automobiles as found by this Court. Section 167 provides a depreciation deduction with respect to property that is used in a trade or business or held for the production of income. No deduction is allowable to the extent that such property is used for personal purposes. International Trading Co., v. Commissioner,275 F.2d 578, 586 (7th Cir. 1960), affg. T.C. Memo. 1958-104. We have found that for the corporation's taxable year ended May 31, 1972 87 percent of Mrs. Bloomberg's use of the automobiles was personal to her, for the corporation's taxable year ended May 31, 1973 86 percent of Mrs. Bloomberg's use of the automobiles was personal to her. Respondent determined allowable depreciation based on 13 percent business usage *490 by Mrs. Bloomberg of these automobiles in each of the taxable years 1971, 1972 and 1973. The taxable years of the corporation and the individual taxpayers overlap. Therefore, the 1 percent discrepancy between respondent's calculation of personal use of the automobiles with respect to the corporation's 1973 taxable year and the individual's 1973 taxable year is immaterial. We find for the respondent on this issue. Issue 4. Bloombergs' Investment Credit
The determination of the proper amount of investment credit for the Bloombergs' 1971 taxable year will be settled on the narrow issue of whether the equipment was acquired during the period during which the credit was terminated. Section 38 provides for an investment credit with respect to certain depreciable property as defined in section 48. Section 49(a)(2), in relevant part, terminated that credit for property acquired after April 18, 1969. Section 50(a)(2) restored the credit with respect to property acquired by a taxpayer: (A) after August 15, 1971, or (B) after March 31, 1971 and before August 16, 1971, pursuant to an order which the taxpayer establishes was placed after March 31, 1971.
Whether a taxpayer *491 has acquired section 38 property within a period during which that section was viable is a question of fact. Determinative of the issue is when the taxpayer obtained "physical possession or control" over such property. Sections 1.48-2(b)(6) and 1.50-1(c) [2]; LTV Corporation v. Commissioner,63 T.C. 39, 46 (1974). Herein, Bloomberg obtained physical possession over the equipment as it was delivered. As can be seen from the table *492 above the items in question were all delivered between September 29, 1970 and March 15, 1971, a period during which the section 38 credit was not viable. Bloomberg argues that the delivery dates are not controlling herein because under Ohio law title to the equipment did not vest in Bloomberg until the first week in August 1971. This argument is specious and not relevant to the issue. The purchase of items under a conditional sales contract imposes a condition subsequent. Tax law cannot await expiration of time within which all such conditions may be satisfied. Therefore it is physical possession and control rather than transfer of title that are relevant to the issue at hand. Bloomberg had received all items prior to March 15, 1971. The contract between Bloomberg and the seller stated that payments were to begin September 25, 1971. However, that contract was dated May 31, 1972 and executed by Bloomberg June 7, 1972. The documents submitted as evidence include a cover letter from the seller referring to a sales contract, note and financing statements which was dated July 29, 1971 and a financing statement and a receipt for its recording cost dated August 10, 1971. The equipment *493 lease between Bloomberg and the corporation with respect to the items in issue reflects execution on July 23, 1972 but refers back to a lease period which commenced July 23, 1971. In any event the restoration of the section 38 credit by section 50(a)(2)(A) refers to property acquired after August 15, 1971. Obviously "The first week of August" does not extend to the 15th. Therefore, Bloomberg must establish that his order for the equipment in issue was placed after March 31, 1971. Section 50(a)(2)(B). Common sense suggests that because all of the property was received by March 15, 1971 the order therefore must have been placed on or prior to that date. The documentary evidence does not support a contrary finding. Based on all the facts and circumstances we find that Bloomberg acquired the subject equipment in a period during which the section 38 investment credit was not viable. Decisions will be entered under Rule 155. Footnotes
1. The difference between this total and the $ 259.78 used in the statutory notice is due to mathematical error.↩
*. Amounts listed in these columns reflect totals with regard to the respective delivery dates.↩
2. Sec. 1.48-2(b) Special rules for determining date of acquisition, original use, and basis attributable to construction, reconstruction, or erection. For purposes of paragraph (a) of this section, the principles set forth in paragraph (a)(1) and (2) of sec. 1.167(c)-1 shall be applied. Thus, for example, the following rules are applicable: * * * (6) Property shall be deemed to be acquired when reduced to physical possession, or control. Sec. 1.50-1(c) Principles to be applied. The principles of sec. 1.48-2(b) and (c) shall be applied in determining when property is acquired and in determining that portion of the basis of property properly attributable to construction, reconstruction, or erection after August 15, 1971.↩