The CLEVELAND ATHLETIC
CLUB, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. C82–2034.

United States District Court,
N.D. Ohio, E.D.

July 19, 1984.

Frank R. Osborne, Roudebush, Brown & Ulrich Co., Cleveland, Ohio, for plaintiff.

John M. Siegel, Asst. U.S. Atty., Cleveland, Ohio, Jonathan B. Formen, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

In this civil tax refund action, the parties have filed cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56(c). Upon consideration of the pleadings, affidavits, and exhibits, this Court denies the plaintiff's Motion, grants the defendant's Motion, and dismisses the complaint.

Jurisdiction rests upon 28 U.S.C. § 1346(a)(1).

### I.

The relevant facts are not disputed. The Cleveland Athletic Club ("the Club") is an organization described in § 501(c)(7) of the Internal Revenue Code of 1954 ("the Code"), 26 U.S.C. § 501(c)(7), as a social club "organized for pleasure, recreation, and other nonprofitable purposes." Under § 501(a), the Club is ordinarily exempt from federal income tax. But, under § 501(b), it is subject to income tax on its unrelated business income [1].

The Club was organized to provide entertainment, amusement, and athletic recreation to its members. To supplement the income received from membership dues, it also conducts certain unrelated business activities. During the years in question, the Club's unrelated business income was derived from two sources—investments, and sales of food and beverage to non-members.

In conducting the food and beverage operation, the Club incurred certain expenses, including salaries, rent, insurance, and depreciation. Income from the business was sufficient to produce a gross profit; however, upon deduction of the expenses listed above (overhead and fixed expenses), a net loss resulted.

Specifically, during the fiscal years ending June 20, 1975, 1976, 1977, and 1978, the Club realized net investment income in the total amount of $149,508, which was taxable as unrelated net losses on sales to non-members in the total amount of $164,-886. In its income tax returns for the years involved, the Club offset its net losses on food and beverage sales to non-members against its investment income. Since the losses exceeded the taxable net investment income, the Club thereby eliminated all of its taxable income.

The Internal Revenue Service ("IRS") determined that the Code did not permit the Club to offset its losses on sales to non-members against its net investment income. On August 3, 1981, the IRS issued a Notice of Deficiency in income taxes paid for the total amount of $31,357. The Club paid the deficiency, with interest, and filed a Claim for Refund, which was disallowed on May 13, 1982. The Club then commenced this action for a refund of the amount paid, plus statutory interest.

### II.

The Club's primary contention is that

---

**1.** Section 501 of the Code provides in pertinent part:

(a) *Exemption from taxation.*—An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503.

(b) *Tax or unrelated business income and certain other activities.*—An organization exempt from taxation under subsection (a) shall be subject to tax to the extent provided in parts II, III, and VI of this subchapter, but (notwithstanding parts II, III, and VI of this subchapter) shall be considered an organization exempt from income taxes for the purpose of any law which refers to organizations exempt from income taxes.

(c) *List of exempt organizations.*—

\* \* \* \* \* \*

(7) Clubs organized for pleasure, recreation, and other nonprofitable purposes, substantially all of the activities of which are for such purposes and no part of the net earnings of which inures to the benefit of any private shareholder.

Revenue Ruling 81–69 [2], the technical advice memorandum disallowing the claimed deductions, is unlawful. The Club also argues that the citations of authority contained in the Ruling do not support the legal theory for which they are cited. Specifically, it claims that a profit motive is not a proper basis upon which to determine the deductibility of unrelated business losses incurred by a § 501(c)(7) organization, and, alternatively, that the Club does not have a profit motive in the operation of its non-member beverage business. The IRS responds by contending that, on their face, the applicable code sections require that a deduction of this type must first be allowable under § 162(a) of the Code [3], which governs "ordinary and necessary expenses in carrying on a trade or business," and that since the Club has failed to meet this standard, their claimed deductions should not be permitted.

A.

As noted, the Club is a § 501(c)(7) organization which is exempt from federal income tax except on unrelated business income. The term "unrelated business taxable income", as it applies to § 501(c)(7) organizations, is defined in § 512(a)(3)(A) as follows:

> ... the term "unrelated business taxable income" means the gross income (excluding any exempt function income), less the deductions allowed by this chapter which are directly connected with the production of gross income (excluding exempt function income) ...

The general definition of "unrelated business taxable income" (not applicable to the Club), as provided in § 512(a)(1), is as follows:

> Except as otherwise provided in this subsection, the term "unrelated business taxable income" means the gross income derived by any organization from any unrelated trade or business (as defined in Section 513) regularly carried on by it, less the deductions allowed by this chapter which are directly connected with the carrying on of such trade or business, both computed with the modifications provided in subsection (b).

The Club contends that the distinction between §§ 512(a)(3)(A) and 512(a)(1) of the Code—the absence of the phrase "trade or business" in the latter section—establishes that gross income and deductions need not be derived from the conduct of a "trade or business" to be included in computing "unrelated taxable income" under § 512(a)(3)(A). Because of this, the Club claims that the results reached in Revenue Ruling 81–69 are wrong, and that their deduction should be allowed.

 Case law makes clear that all deductions, whether with respect to individuals or corporations, are matters of legislative grace, and unless the claimed deductions come clearly within the scope of the statute, they are not allowed. When construing the statutory provision under which the deduction is sought, the general rule that public laws should be interpreted in light of the popular or received import of words is applicable. *Deputy v. du Pont,* 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 (1940); *International Trading Co. v. Commissioner,* 275 F.2d 578 (7th Cir.1960).

 Section 512(a)(3)(A) requires that for an expense to be deductible it must meet two requirements. First, the deduction must be directly connected with the production of gross income; and second, it must be a deduction "allowed by this chapter." The parties agree that the deductions claimed were directly connected with the production of gross income; their dispute is over the meaning of the phrase

---

**2.** Revenue Ruling 81–69 concluded that:

> (1) A section 501(c)(7) social club cannot utilize the excess of expenses generated by activity with non-members as an offset against investment income.
> (2) The expenses incurred and paid out by a section 501(c)(7) social club in non-member activity, to the extent that they exceed the

income therefrom, are not allowable deductions under section 162(a) of the Code.

**3.** Section 162(a) of the Code provides:

> *In general.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business...

"allowed by this chapter." Using the standard of statutory interpretation as set forth in *Deputy v. du Pont*, the Code must be read and interpreted by its plain meaning. As the IRS points out, the phrase "allowed by this chapter" can only be read to refer to Chapter One of the Code, 26 U.S.C. §§ 1–1379. Section 162(a) is Chapter One's general rule for allowance of trade or business deductions. Using the plain meaning of § 512(a)(3)(A), the expenses claimed by the Club were deductible only if they are allowable deductions under § 162(a) of the Code.

**B.**

■ Section 162(a) provides that "there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any *trade or business...*" Whether activities amount to carrying on a "trade or business" within the statute is largely a matter of degree, and determination depends upon the facts in each case.

■ Prominent among the factors used to determine whether a taxpayer is engaged in carrying on a "trade or business" is the presence or absence of a profit motive and business-like policies similar to those customarily evidenced by the taxpayer in other business activities. The taxpayer need not have a reasonable expectation of profit for his activities to constitute the carrying on of a trade or business, but he or she must initiate or conduct the business in good faith, with an intention of making a profit or of producing income. *International Trading Co.*, 275 F.2d at 584. The Club concedes that to qualify as a "trade of business" under the Code, the activity must be "profit motivated". *Patterson v. United States*, 198 Ct.Cl. 543, 459 F.2d 487 (1972); *Snyder v. United States*, 674 F.2d 1359 (10th Cir.1982); *see* Plaintiff's Motion for Summary Judgment at 6–7.

The profit motive requirement has been the basis for denying deductions to a number of tax-exempt organizations. *Five Lakes Outing Club v. United States*, 468 F.2d 443 (8th Cir.1972); *Adirondack League Club v. Commissioner*, 55 T.C. 796 (1971), *aff'd per curiam*, 458 F.2d 506 (2d Cir.1972). In *Adirondack League Club*, a club was formed for the purpose of preserving and conserving the Adirondack forests and protecting game and fish in the region, but it also received income from conducting a timber operation on its land. During the years in issue, the taxpayer incurred net losses on its membership activities and net gains from cutting and selling timber. The profits realized from the timber business were applied to offset the losses realized in the membership activities, thereby eliminating the need to increase membership dues. The Tax Court decided that the only issue was whether a profit motive was a prerequisite to deductibility under § 162(a) for the taxpayer. Answering the question affirmatively, it held that since the taxpayer had no overall profit motive, the expenses in issue were not paid or incurred in any trade or business, and were therefore not deductible. 55 T.C. at 809. Although this case dealt with the attempted deduction of member losses from non-member income, the principle establishing that a profit motive must be present before a deduction will be allowed is clear. That the Club seeks to deduct a slightly different type of loss does not adequately distinguish its claims from those rejected by the Tax Court and the Second Circuit.

**C.**

The Club argues, in the alternative, that if the Code makes a profit motive a prerequisite for the claimed deductions, it did in fact conduct its non-member food and beverage business in such a manner. To support this claim, the Club states that its food and beverage business generated enough revenue to offset more than $233,000 of the overhead and fixed expenses which club members would otherwise have had to pay. The Club also claims that the meals and drinks were priced competitively with other restaurants in the area.

■ The Club has the burden of proof to establish that its intent and purpose in the

non-member food and beverage business was to make a profit. *Pickering v. Commissioner,* 652 F.2d 616 (6th Cir.1981). In determining whether such intent is present, the IRS has promulgated the following guidelines: (1) the manner in which the activity was conducted; (2) the expertise of the taxpayer of his advisors; (3) the time and effort expended on the activity; (4) the expectation of asset appreciation; (5) the success of the taxpayer in similar or dissimilar activities; (6) the history of income or loss of the activity; (7) the amount of profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) the presence of elements of personal pleasure of recreation. Treas.Reg. § 1.183–2(b); *Pickering,* 652 F.2d at 617.

Using the above guidelines, the facts support the government's claim that making a profit was not the primary objective of the Club's food and beverage business. While it is not necessary that the Club make a profit in order to have a profit motive, it must have initiated or conducted the business in good faith with an intention of making a profit or of producing income. *International Trading Co. v. Commissioner,* 275 F.2d at 584.

The Club is an organization described in § 501(c)(7) as a social club organized for pleasure, recreation, and other nonprofitable purposes. Although the Club argues otherwise, the record indicates that the primary motive of the food and beverage business was not to earn a profit. Instead, the facts show that, although it was run in an efficient manner, and in an attempt to maximize earnings, the main objective of the food and beverage business was to defer some of the fixed or overhead costs which otherwise would have to be paid by the Club's members. Throughout the years in question, earnings from the food and beverage business never did exceed the overhead and fixed expenses, resulting in consistent net losses. Therefore, although the Club initiated the food and beverage program to lessen the financial burden on its members, it has not adequately established its intent that the program earned a profit.

### III.

The Club's claimed deductions for losses are not allowable because they fail to meet the requirements of § 162(a) of the Code. The defendant's Motion for Summary Judgment is granted.

IT IS SO ORDERED.