T.C. Memo. 2014-160

UNITED STATES TAX COURT

DELLWARD R. JACKSON AND JUDITH N. JACKSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2513-11.                     Filed August 7, 2014.

During the tax years at issue Ps sold insurance policies at
recreational vehicle (RV) rallies.  R disallowed depreciation and
interest deductions that Ps claimed as business expenses and
determined accuracy-related penalties under I.R.C. sec. 6662(a).

<u>Held</u>:  Ps' use of their RV had substantial business purpose but
I.R.C. sec. 280A prohibits Ps from deducting the RV expenses.

<u>Held</u>, <u>further</u>, Ps are liable for accuracy-related penalties under
I.R.C. sec. 6662(a).

<u>Jeffrey D. Moffatt</u>, for petitioners.

<u>Suzanne M. Warren</u>, for respondent.

**[*2]**      MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, <u>Judge</u>:  This case is before the Court on a petition for redetermination of the following deficiencies and penalties respondent determined in a notice of deficiency for petitioners' 2006 and 2007 tax years.

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|---------------------|
| 2006 | $13,984 | $2,796.80 |
| 2007 | 28,244 | 5,648.80 |

After concessions,[1] the issues[2] for decision are:

---

[1]The parties have stipulated that petitioners are entitled to a car and truck business expense deduction of $5,317 for the 2007 tax year and that petitioners correctly reported a long-term capital gain of $68,973 for their 2007 tax year.

[2]Petitioners' counsel, Jeffrey Moffatt, claims we removed sec. 280A from consideration at trial.  We did not.  We merely stated that our primary factual concern at trial was sec. 162, and in directing the parties to file briefs, we specifically noted that the case involved sec. 280A issues.  Furthermore, Mr. Moffatt's briefs do not conform to our Rules.  Because the Court recognizes that its statements may have contributed to the misunderstanding, we will not punish petitioners for their counsel's misapprehension in deeming the sec. 280A issue waived.  <u>See</u> <u>Bradley v. Commissioner</u>, 100 T.C. 367, 370-371 (1993) (on the Commissioner's motion to dismiss, finding that the taxpayers waived objections not pursued on brief).  All section references are to the Internal Revenue Code (Code) as amended and in effect for the tax years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]**   (1) Do petitioners' expenses related to their recreational vehicle (RV) qualify as business expenses?  We hold that they do;

(2) Does section 280A nevertheless prohibit them from deducting those expenses?  We hold that it does; and

(3) Are petitioners liable for accuracy-related penalties under section 6662(a)?  We hold that they are.

## FINDINGS OF FACT

The parties' stipulation of facts, supplemental stipulation of facts, second supplemental stipulation of facts, stipulation of settled issues, and accompanying exhibits are incorporated herein by this reference.  Petitioners resided in California at the time they filed their petition.

Dellward Jackson was the owner-operator of Dell Jackson Insurance Services (Dell Jackson Insurance), an insurance brokerage business, for about 30 years until he sold the business and retired in 2011.  Judith Jackson was also a part of Dell Jackson Insurance, both as an agent and as officer manager.  Petitioners sold a number of insurance products including homeowners, rental property owners, commercial, life, disability, and health insurance.  Petitioners worked at least 40 hours weekly at the Dell Jackson Insurance office in Copperopolis, California.

[*4]   In 2004 petitioners began selling RV insurance in addition to the other products.  Prior to that date, petitioners had sold auto insurance policies that would cover RVs.  But petitioners recognized that traditional auto insurance policies were not well suited for the higher end RVs.  When they learned of RV-specific policies, they decided that they could market these policies at weekend RV rallies.  And it was at this point that petitioners' business and personal interests began to intersect.

Petitioners joined their first RV club in 1995.  These clubs are chapters of the Family Motor Coach Association, which was established in 1963.  These clubs hold RV rallies, which, according to petitioners, are held about once a month and are primarily social events.  A rally would usually start on Friday afternoon, and the participants would hold a potluck dinner that night.  On Saturday, after a breakfast provided by the "trail boss", the club would have an information session, often about RV maintenance issues.  Only RV owners may attend these rallies.  Ownership is similarly required by certain RV parks.  Some parks also prohibit RVs older than a certain age.  During the years at issue petitioners were members of the Gold Diggers and the Goldengate club chapters.  They remained members of these two chapters at least up to the time of trial.

[*5] Starting in 2004, petitioners began attending RV rallies not just for pleasure but also for business purposes. At or around the same time, they purchased a 2004 Winnebago RV. We reject petitioners' contentions that they attended RV rallies solely for business purposes from 2004 but instead find that they had mixed purposes. Petitioners would gather sales leads at every rally. To that end, petitioners had a banner that they attached to their RV advertising Dell Jackson Insurance. Petitioners would set up an information table outside of their RV or outside the clubhouse, if the site had one. If they set up a table by a clubhouse, petitioners moved the banner from the RV to the table. Otherwise, the sign remained on the RV from the time they arrived until the time they left. Petitioners would invite potential customers to come to their RV, and they would sit either outside or inside the RV and discuss the prospective client's insurance needs. It would often take months, if not years, for a relationship with a potential customer, which could begin with a lead, to develop into an actual sale.

Petitioners would gather information from potential clients. When they returned to the office after the weekend, they would use that information to generate rate quotes. They would bring the quotes, policies, and other data to the next rally. Clients would review and sign policies in petitioners' or their own

[*6] RVs. Petitioners did not limit their sales at the rallies to RV insurance; they sold all types of policies.

Petitioners' certified public accountant, William Hartley, prepared the tax returns for both years at issue using the information petitioners provided. During the 2006 tax year petitioners deducted $47,461 for depreciation of their 2004 Winnebago. Petitioners claimed 100% business use for the RV for 2006. Petitioners admitted at trial, however, that they took two or three personal trips in that RV during 2006. In 2007 petitioners purchased a brand-new Winnebago for $248,456.96. On their 2007 Federal income tax return, petitioners deducted $60,424 for depreciation of the new Winnebago. Petitioners reported business use of 99.95% and a depreciable basis of $302,119. Petitioners testified that, because of Mrs. Jackson's health, they took no personal trips during 2007.

Petitioners deducted as a business expense interest paid with respect to the financing of the 2007 Winnebago. Petitioners provided a calendar of the 2007 trips on which they recorded 15 trips in that year. They also provided a log that described in more detail their meetings with specific clients and potential clients. The total gross receipts directly attributable to petitioners' RV rally contacts were $14,882 and $19,446 for the 2006 and 2007 tax years, respectively.

**[\*7]**   In the notice of deficiency, respondent disallowed the depreciation deductions.  Respondent also disallowed the interest expense as a business expense.  Petitioners timely petitioned this Court for redetermination.

OPINION

As a general rule, the Commissioner's determination of a taxpayer's liability is presumed correct, and the taxpayer bears the burden of proving that the determination is improper.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving that he is entitled to any claimed deductions.  New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  This includes the burden of substantiation.  Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976).  Although section 7491 may shift the burden of proof in specified circumstances, petitioners have not established that they meet the prerequisites, under section 7491(a)(1) and (2), for such a shift.

I.     Petitioners' RV Expenses as Business Expenses

Section 167(a) allows taxpayers a depreciation deduction for property used in a trade or business or held for the production of income, whereas section 163(a) allows a deduction for all interest paid or accrued on indebtedness.  But section

[*8] 262(a) disallows deductions "for personal, living, or family expenses," and section 163(h) prevents noncorporate taxpayers from deducting personal interest.

To determine whether property is used in a trade or business or held for the production of income, we look to "whether the acquisition and/or maintenance of property was primarily associated with profit-motivated purposes." Gill v. Commissioner, T.C. Memo. 1994-92, 1994 WL 59249, at *6 (citing Int'l Artists, Ltd. v. Commissioner, 55 T.C. 94, 104 (1970)), aff'd without published opinion, 76 F.3d 378 (6th Cir. 1996). If there is personal use, it must "be distinctly secondary and incidental". Int'l Artists, Ltd. v. Commissioner, 55 T.C. at 104. If the expenses are primarily motivated by personal considerations, section 262 prohibits the taxpayer from deducting them. Id. In certain circumstances where substantial personal and substantial business motives coexist, we can allocate the expenses between personal and business use. Id. at 105; see also Int'l Trading Co. v. Commissioner, 275 F.2d 578, 587 (7th Cir. 1960), aff'g T.C. Memo. 1958-104; Deihl v. Commissioner, T.C. Memo. 2005-287, slip op. at 25.

There is no question that petitioners used the RV for personal purposes. They admitted such with respect to the 2006 tax year. The parties disagree, however, as to whether petitioners, when attending the RV rallies, used the RV for pleasure or business. Respondent appears concerned primarily with the magnitude

[*9] of the expense, calling the RV opulent and extravagant, as well as the perceived social aspect of these rallies.  Respondent's position has merit.  Petitioners attended these rallies in a purely social setting for at least nine years before using the rallies as a business venue, and they have continued to attend such rallies since they retired and sold their insurance business.

Nevertheless, there is no doubt that petitioners actively sold insurance policies during their time at the rallies and that their business activities generated not-insignificant revenue.  While respondent seems to emphasize the meager gross receipts compared to the significant capital outlay, petitioners' gross receipts from the rallies steadily increased each year, tripling in the four years after they began conducting business at RV rallies.  Many businesses incur a loss in their early years while they are spooling up, establishing their reputation, and acquiring a customer base.  In the insurance business, this is very important because of renewal commissions, and the value of the book of continuing business adds to goodwill and the market price of the insurance agency.

Petitioners credibly testified that they spent their time at these rallies cultivating business contacts and closing sales.  One of petitioners' clients even described Mr. Jackson as having the reputation of being "a pest about insurance".  Petitioners had a substantial business purpose in purchasing the RV,

**[\*10]** and we believe this an appropriate situation to allocate the depreciation and interest deductions between business and personal uses. But before we can allocate, we must consider the impact of the substantiation rules.

Section 274(d) disallows deductions, including depreciation and interest, with respect to certain items of property unless the taxpayer meets certain substantiation requirements. These items of property include "property used as a means of transportation" and "any property of a type generally used for purposes of entertainment, recreation, or amusement". Sec. 280F(d)(4)(A). A recreational vehicle, not used for transportation of people or cargo for hire, see sec. 280F(d)(4)(C), falls within these definitions. Therefore petitioners must "substantiate[] by adequate records or by sufficient evidence corroborating * * * [their] own statement" the amount of the expense, the time and place of use of the property, the business purpose, and "the business relationship to the taxpayer of persons * * * using the facility or property". Sec. 274(d); see also sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

For the 2007 tax year, petitioners produced a calendar listing the dates of the rallies and the clients with whom they met. They kept this calendar record contemporaneously with the rallies. They also produced a list prepared during respondent's examination that details the types of conversations held with clients

[*11] during the 2007 rallies. While "postevent ballpark estimates" are generally insufficient to meet the substantiation requirements, Moss v. Commissioner, 135 T.C. 365, 369 (2010), we find this document reliable as a showing of business purpose corroborated by the calendar and affidavits of clients, see sec. 1.274-5T(c)(3), Temporary Income Tax Regs, 50 Fed. Reg. 46020 (Nov. 6, 1985). For the 2006 tax year petitioners produced no records, and we cannot find that they adequately substantiated any business purpose for that tax year.[3] Absent two brief assertions in affidavits that the affiants purchased policies in 2006, petitioners' testimony is uncorroborated for the 2006 tax year. These affidavits are not enough for the purposes of section 274.

The Code does not prevent taxpayers from enjoying their work or from turning a leisure activity into a profitable one. See Jackson v. Commissioner, 59 T.C. 312, 317 (1973) (recognizing that "suffering has never been made a prerequisite to deductibility"). That being said, we think it undeniable that there is an element of personal use. Yet, as discussed above, we think petitioners after

---

[3]At the end of the trial, Mr. Moffatt asked for permission to introduce a binder with mileage logs. However, he violated our pretrial order by not exchanging this document with respondent at least 15 days before trial. Respondent objected to the inclusion of this exhibit, and because we concluded respondent had been prejudiced and surprised by the proposed evidence, we refused to admit it.

**[*12]** 2004 and before 2012 had substantial and predominant business motives in their RV activities. After reviewing the evidence in the record and considering petitioners' testimony, we believe petitioners to have spent two-thirds of their time during these rallies on business. Therefore, petitioners' business use of the RV amounted to 66-2/3% in 2007. We cannot allocate the use in 2006; petitioners failed to establish a business use because they could not sufficiently corroborate their testimony.

We note two other issues with petitioners' 2007 depreciation deduction. On petitioners' 2007 tax return, they claim a cost basis of $302,270 for the RV. But the sale contract between the RV dealership and petitioners states a cost of $248,456.96. The difference may be sales or use tax and license fees, which were not currently deducted but instead capitalized. Petitioners did not substantiate the higher cost basis, reported on their return, and they must use the lesser amount to calculate any allowable 2007 depreciation.

It follows that--except for the important impediment imposed by section 280A, discussed infra--66-2/3% of the claimed depreciation on the new Winnebago and of petitioners' 2007 interest expense would be deductible as a reasonable allowance for the "exhaustion, wear and tear" on the Winnebago and for "interest paid or accrued on indebtedness properly allocable to a trade or

[*13] business". See secs. 163(h)(2)(A), 167(a); see also sec. 1.163-8T, Temporary Income Tax Regs., 52 Fed. Reg. 24999 (July 2, 1987). The balance of petitioners' 2007 interest expense and claimed depreciation are personal expenses and may not be deducted. Secs. 163(h)(1), 262(a).

II.    Petitioners' RV as a Dwelling Unit

Now we must address respondent's secondary argument, namely that section 280A prevents petitioners from taking any deduction with respect to the RV. Section 280A(a) and (b) provides the general rule that individual and S corporation taxpayers cannot deduct expenses "with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence" unless such a deduction would be allowable "without regard to its connection with * * * [the taxpayer's] trade or business * * * [or] income-producing activity".

Use as a residence is a defined term. Sec. 280A(d). Generally, "a taxpayer uses the dwelling unit during the taxable year as a residence if he uses such unit (or portion thereof) for personal purposes for a number of days which exceeds the greater of--(A) 14 days, or (B) 10 percent of the number of days during such year for which such unit is rented at a fair rental." Sec. 280A(d)(1). "Dwelling unit" is also a defined term and "includes a house, apartment, condominium, mobile home, boat, or similar property". Sec. 280A(f)(1)(A). This Court has previously held

[*14] that a motor home qualifies as a dwelling unit within the meaning of section 280A(f)(1)(A).  See, e.g., Haberkorn v. Commissioner, 75 T.C. 259, 260 (1980); Dunford v. Commissioner, T.C. Memo. 2013-189, at *23-*24; Perry v. Commissioner, T.C. Memo. 1996-194, slip op. at 14.  Although we use the more modern term throughout this opinion, an RV and a motor home are one and the same thing.  Petitioners and counsel used the two terms interchangeably at trial.  Accordingly, petitioners' RV is a dwelling unit for purposes of section 280A.

The question is then whether petitioners used the RV for personal purposes for more than 14 days.  "Personal purposes" is also a defined term, and a "taxpayer shall be deemed to have used a dwelling unit for personal purposes for a day if, for any part of such day, the unit is used * * * for personal purposes by the taxpayer".  Sec. 280A(d)(2) (emphasis added).  Our finding above that petitioners had some personal use of the RV is fatal to their position.  Any personal use, including watching TV in the RV, makes the entire day a personal day.  Petitioners therefore used the RV as a dwelling unit for personal purposes for more than 14 days, and section 280A prohibits them from taking any deductions with respect to the RV.[4]

_____

[4]From reviewing the notice of deficiency and enclosures thereto, it appears to the Court that, in conjunction with disallowing petitioners' 2007 deduction on Schedule C, Profit or Loss From Business, for interest paid on their RV, respondent may have reclassified the interest as qualified residence interest, see

(continued...)

**[\*15]** <u>See also</u> <u>Dunford v. Commissioner</u>, at \*15 (denying the taxpayers' business deductions with respect to their motor home because they used it as a residence).

Section 280A(c) contains a number of exceptions to the general rules described above, including one which allows a taxpayer to allocate costs to a certain portion of the dwelling unit.  But the exception, as relevant to petitioners, requires that a portion of the dwelling unit be "exclusively used" on a regular basis "as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business".  Sec. 280A(c)(1)(B).  Exclusivity is the key here as petitioners did not use any portion of their RV exclusively for business.  They therefore do not meet the requirements for allocations under section 280A(c).  <u>See</u> <u>Salih v. Commissioner</u>, T.C. Memo. 1994-627, 1994 WL 706221, at \*3 (finding that the taxpayer failed to prove he

---

[4](...continued)
sec. 163(h)(2)(D), (3), (4)(A), and allowed the deduction on Schedule A, Itemized Deductions.  In 2007 petitioners reported a business interest expense of $10,222 on Schedule C and a home interest expense of $23,848 on Schedule A. Respondent disallowed $10,110 of the Schedule C deduction but also increased petitioners' Schedule A deduction by $10,115 without offering any explanation for the increase.  To the extent that respondent did reclassify petitioners' claimed interest expense as deductible home mortgage interest, we do not disturb this adjustment or any subsequent agreement between the parties on this subject.

**[\*16]** used the television and VCR in his claimed home office exclusively for business), aff'd without published opinion, 77 F.3d 490 (9th Cir. 1996).

This result may seem harsh, but it is the operation of the statute, which reflects Congress' desire to prevent taxpayers from deducting personal expenses as business expenses. In enacting section 280A, Congress wished to prevent taxpayers from deducting costs associated with their personal residences as well as vacation homes. The Senate Finance Committee wrote: "[T]here is a great need for definitive rules to resolve the conflict that exists between several recent court decisions [which had allowed taxpayers to claim deductions] and the position of the Internal Revenue Service as to the correct standard governing the deductibility of expenses attributable to the maintenance of an office in the taxpayer's personal residence." S. Rept. No. 94-938, at 147 (1976), 1976-3 C.B. (Vol. 3) 49, 185. Congress adopted the Internal Revenue Service's position and set forth the new rule. Congress believed that the prior "appropriate and helpful" standard used by the courts in determining whether similar home office expenses were deductible

> result[ed] in treating personal living, and family expenses which are directly attributable to the home (and therefore not deductible) as ordinary and necessary business expenses, even though those expenses did not result in additional or incremental costs incurred as a result of the business use of the home. Thus, expenses otherwise considered nondeductible personal, living and family expenses might be converted into deductible business expenses simply because, under

**[\*17]** the facts of the particular case, it was appropriate and helpful to perform some portion of the taxpayer's business in his personal residence. \* \* \*

Id. Section 280A casts a wide net in this regard and sometimes catches taxpayers, like petitioners, who in addition to their personal use had genuine business purposes. Thus, while petitioners' RV may be "appropriate and helpful" in their business, they have failed to meet the stringent requirements of section 280A.

III.    Petitioners' Liability for Accuracy-Related Penalties

Respondent also determined accuracy-related penalties under section 6662(a). Respondent bears the burden of production for the determined penalties and must produce sufficient evidence establishing that it is appropriate to impose the penalties. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). However, the burden to establish that they acted with reasonable cause remains with petitioners. See id. at 446-447.

Section 6662(a) imposes an accuracy-related penalty equal to 20% of an underpayment of tax attributable to one of five causes specified in subsection (b). Respondent contends that petitioners are liable for the penalties because of negligence and/or disregard of the rules or regulations or, alternatively, because the underpayments are due to substantial understatements of income tax. See sec. 6662(b)(1) and (2).

**[*18]** For purposes of the penalty, "'negligence' includes any failure to make a reasonable attempt to comply with the provisions of this title". Sec. 6662(c). Under caselaw, "'[n]egligence is a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" Freytag v. Commissioner, 89 T.C. 849, 887 (1987) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), aff'g on this issue 43 T.C. 168 (1964) and T.C. Memo. 1964-299), aff'd, 904 F.2d 1011 (5th Cir. 1990), aff'd, 501 U.S. 868 (1991). A substantial understatement of income tax in the case of an individual is (with certain modifications which do not apply in this case) an understatement of income tax that exceeds the greater of (1) 10% of the tax required to be shown on the return for the taxable year or (2) $5,000. Sec. 6662(d)(1)(A).

There is an exception to the section 6662(a) penalty when a taxpayer can demonstrate that the taxpayer (1) had reasonable cause for the underpayment and (2) acted in good faith with respect to the underpayment. Sec. 6664(c)(1). Regulations promulgated under section 6664(c) further provide that the determination of reasonable cause and good faith "is made on a case-by-case basis, taking into account all pertinent facts and circumstances." Sec. 1.6664-4(b)(1), Income Tax Regs.

**[\*19]**  If a taxpayer can show that he reasonably relied on a tax professional, then he may avoid a section 6662(a) penalty.  See sec. 1.6664-4(c), Income Tax Regs. But to do so, the taxpayer must meet the following three-prong test:  "(1) The adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment."  Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

Respondent determined that petitioners' understatements exceeded $5,000, which is greater than 10% of the tax required to be shown on the returns, for both tax years, and he has met his burden of production.  Petitioners did not produce sufficient evidence that they acted with reasonable cause and in good faith. Petitioners took deductions contrary to the plain language of the statute, and they have not alleged a misunderstanding of section 280A.[5]  See sec. 1.6664-4(b)(1), Income Tax Regs. (stating that "an honest misunderstanding of fact or law" may

---

[5]Both at trial and in a pretrial memorandum, petitioners' counsel insisted that sec. 280A does not apply to motor homes, which suggests a misunderstanding of our prior caselaw on that very subject.  See Haberkorn v. Commissioner, 75 T.C. 259, 260 (1980).  However, petitioners did not testify and have offered no other evidence tending to show that they misunderstood the law or its application to their factual situation.

[*20] be reasonable cause). Nor do petitioners allege that they relied on a professional, such as their certified public accountant, whom they did not call to testify at trial, for tax advice. Petitioners introduced no evidence as to their accountant's qualifications, the nature of his advice, if any, as to the RV deduction, or their reliance on any of that advice. The only testimony was that petitioners provided their accountant with the raw numbers and he calculated the tax from those numbers and prepared the tax returns. Consequently, the exception for reasonable cause does not apply here, and petitioners are liable for the accuracy-related penalties.

The Court has considered all of petitioners' contentions, argument, requests, and statements. To the extent not discussed herein, we conclude that they are moot, irrelevant, or without merit. To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.