T.C. Memo. 2019-19

UNITED STATES TAX COURT

CARLOS LANGSTON AND PAMELA LANGSTON, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4270-17.　　　　　　　　　　Filed March 21, 2019.

David J. Looby, for petitioners.

William F. Castor and H. Elizabeth H. Downs, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NEGA, Judge:　Respondent determined deficiencies in petitioners' Federal

income tax and imposed accuracy-related penalties under section 6662(a)[1] as

follows:

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the taxable years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar.

**[*2]**

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2012 | $79,227 | $15,844 |
| 2013 | 226,070 | 45,050 |

After concessions,[2] the issues remaining for decision are: (1) whether petitioners are entitled to depreciation deductions for the 2006 Meridian 580 yacht (Meridian 580) and 2011 Keystone Raptor (Raptor RV) they claimed to use in their trade or business, (2) whether petitioners converted their home from personal use to income-producing use, and (3) whether petitioners are liable for accuracy-related penalties under section 6662(a).

FINDINGS OF FACT

Some of the facts are stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Oklahoma when the petition was timely filed.

I.  Petitioners' Backgrounds

Carlos Langston holds a bachelor's degree in business administration and a master's degree in petroleum engineering from the University of Tulsa. Since

---

[2]Both parties concede various amounts relating to deductions claimed on Schedule C, Profit or Loss From Business, and Schedule E, Supplemental Income and Loss.

[*3] graduation in 1990 Mr. Langston has been self-employed in the oil and gas industry. Pamela Langston holds a bachelor's degree in accounting and a juris doctor from the University of Tulsa. From graduation in 1997 to 2005 Ms. Langston worked for a mid-size law firm in Tulsa where she became a partner in 2002. While at the law firm, Ms. Langston was the named attorney on at least two tax law cases.

II.     Port Carlos

Mr. Langston's parents, and then his mother alone, owned and operated Port Carlos Marina (Port Carlos) in Ketchum, Oklahoma, from the 1950s until August 26, 2011, when Mr. Langston's mother sold Port Carlos to petitioners. Port Carlos' primary location consists of 100 covered dock slips and multiple structures while its secondary location, Masthead Marina, is 15 minutes from the primary location. Masthead Marina is a sailboat cove with 50 uncovered boat slips.

On September 7, 2011, petitioners formed Port Carlos as a domestic limited liability company. On July 6, 2011, Mr. Langston purchased the Meridian 580 for $245,920. On April 14, 2011, Mr. Langston purchased the Raptor RV for $69,092.

[*4] III.     75th Place Property

Petitioners purchased the 75th Place property in 1997 and lived in that home until 2005.  In May 2001 petitioners sought to refinance the 75th Place property for the purpose of renovations and subsequently on May 15, 2001, had the 75th Place property appraised at a fair market value of $290,000.

In January 2005 petitioners moved out of the 75th Place property to the Vintage on Yale Apartments (Yale Apartment).  Because of the size of the Yale Apartment, petitioners could not accommodate all of their furniture and personal items.  Originally, only one garage was available at the Yale Apartment, and thus petitioners rented additional units at a storage facility a mile away.  As garages became available, petitioners moved their furniture and personal items to the Yale Apartment garages for convenience as they needed to transfer items to and from storage for use.[3]  When petitioners ended their lease they had a total of four garages.

Petitioners lived at the Yale Apartment until June 2008 when they purchased a third property in which they live currently.  The renovations to the 75th Place property were completed in 2010.

_____

[3]The garages did not house any vehicles and were solely used for storage.

[*5]  In 2011 petitioners were informed by their insurance agent that their homeowners insurance coverage would be terminated if the 75th Place property remained vacant.  As a result petitioners marketed the home by word of mouth as a rental property.  In July 2011 petitioners rented the 75th Place property to a fraternity brother of Mr. Langston's for $500 a month.[4]

In June 2012 petitioners listed the 75th Place property for $563,850 and subsequently sold the home in February 2013 for $540,000.

IV.    Tax Returns and Notice of Deficiency

Petitioners timely filed their returns for tax years 2012 and 2013.  Those tax returns were prepared by Kathy Burch, who is a certified public accountant and an attorney.[5]

For tax year 2012 petitioners claimed Schedule C depreciation deductions on the Meridian 580 and the Raptor RV of $139,996 and $30,709, respectively.  Ms. Burch did not receive any documentation from petitioners regarding the

---

[4]The fair market rent was approximately $2,500 to $2,800.  Petitioners credibly testified that the rent amount was reached because the renter would be in the home only five days per month and that $500 was the prorated amount.

[5]Ms. Burch holds a bachelor's degree in accounting from East Central University.  She also holds a master's degree in taxation and a juris doctor degree from the University of Tulsa.

[*6] contribution of the assets to Port Carlos, nor did she receive any documentation substantiating their business use.

For tax year 2013 petitioners claimed Schedule C depreciation deductions for the Meridian 580 and the Raptor RV of $36,421 and $10,234, respectively. Attached to petitioners' 2013 return was a Form 4797, Sales of Business Property. In that form they claimed a loss deduction of $436,633 relating to the sale of the 75th Place Property. Ms. Burch reported that the 75th Place property was acquired on July 1, 2011, and used a cost basis of $1,027,415 instead of the fair market value of the home to calculate the loss.[6] Ms. Burch believed that the fair market value of the home was "a little bit below" the sale price of $540,000.

In September 2014 a revenue agent (RA) from the Internal Revenue Service began an examination of petitioners' claimed deductions and Form 4797 loss. During the RA's examination she toured, with the manager, all of Port Carlos, including the Meridian 580 and the Raptor RV. While onboard the Meridian 580 she saw numerous personal items that gave the impression it was not used as a boat sales office.[7] There were no placards, banners, or other identifying signage

---

[6]Mr. Burch reached this number by adding to the original purchase price the cost of all the improvements to the home and the expenses of the sale.

[7]The RA credibly testified to seeing DVDs, swimsuits, towels, curling irons, (continued...)

**[*7]** indicating that the Meridian 580 was the boat sales office, and petitioners did not keep documentation, records, or logs of boat sales activity occurring onboard the Meridian 580. During the RA's tour of the Raptor RV she observed a suitcase, clothing, and a pot on the stove, again indicating it was not used as a boat sales office.

On December 1, 2016, petitioners were issued a notice of deficiency for tax years 2012 and 2013. The RA denied the depreciation deductions for the Meridian 580 and the Raptor RV for not being ordinary and necessary and denied the loss deduction on the sale of the 75th Place property because it was their primary residence.

OPINION

I.    Burden of Proof

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving those determinations erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace. Deputy v. du Pont, 308 U.S. 488, 493 (1940). Taxpayers must comply with specific requirements for any

---

[7](...continued)
toothbrushes, toothpaste, soap, and various other hygiene items.

**[*8]** deductions claimed.  See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

In order to shift the burden of proof to the Commissioner, the taxpayer must, inter alia, introduce credible evidence with respect to the issues and have complied with all substantiation and record keeping requirements imposed by the Code. Sec. 7491(a)(1) and (2).  Credible evidence is that which the Court would find sufficient upon which to base its decision if no contrary evidence were submitted. Higbee v. Commissioner, 116 T.C. 438, 442 (2001).  A taxpayer who provides only self-serving testimony and inconclusive documentation does not provide credible evidence.  See id. at 445-446.  Petitioners provided no credible evidence with respect to the issues and provided only self-serving testimony.

The Commissioner generally bears the burden of production with respect to any accuracy-related penalties under section 6662.  See sec. 7491; Higbee v. Commissioner, 116 T.C. at 446.  Once the burden of production is met, the taxpayer bears the burden of proof, including the burden of proving reasonable cause for his or her underpayment of Federal income tax.  See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447.

**[*9]** II.        Section 167

Section 167(a) allows as a depreciation deduction a reasonable allowance for the "exhaustion, wear and tear" of property used in a trade or business. Section 274(a)(1)(A) disallows deductions involving entertainment, amusement, or recreational activities unless the taxpayer establishes that the item was directly related to or associated with the active conduct of the taxpayer's trade or business. Section 274(a)(1)(B) disallows deductions incurred with respect to a facility used in connection with such entertainment activities. A yacht is an entertainment facility within the meaning of section 274(a)(1)(B) if it is used during the taxable year for, or in connection with, entertainment. Becnel v. Commissioner, T.C. Memo. 2018-120; sec. 1.274-2(e)(2)(i), Income Tax Regs.

Section 274(d) disallows deductions, including depreciation, for certain "listed property" as defined under section 280F(d)(4) unless the taxpayer satisfies the strict substantiation requirements of this section. Listed property includes property used for transportation and property of a type generally used for purposes of entertainment, recreation, or amusement. Secs. 274(d)(4), 280F(d)(4)(A)(ii) and (iii). RVs generally are included as "listed property" under section 280F(d)(4). See Jackson v. Commissioner, T.C. Memo. 2014-160.

**[*10]** The strict substantiation rule requires the taxpayer to maintain records, or other documentary evidence corroborating his own statement, adequate to establish the business purpose, the amount of each expenditure, the amount of each business use, the total use of the listed property, and the dates of the expenditures and uses. See sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). To meet the adequate records requirements, a taxpayer must maintain an account book, a log, or other documentary evidence which, in combination, is sufficient to establish each element of an expenditure or use. Id. para. (c)(2), 50 Fed. Reg. 46017. If a taxpayer does not satisfy the adequate records requirements with respect to one or more elements, he may substantiate those elements with his or her own detailed statement and with other corroborative evidence. Id. subpara. (3)(i), 50 Fed. Reg. 46020.

A.    Meridian 580

Petitioners testified that the Meridian 580 was used solely for business purposes, operating as a boat sales office at Port Carlos. However, there was no testimony from anyone other than the petitioners and their general manager to support their claims. Petitioners did not produce any documentation, records, or logs of any business activity taking place onboard the Meridian 580 outside of testimony from petitioners and their manager. Further, the Meridian 580 had no

[*11] sign or other indication it was being used as a boat sales office.  Thus, the Court does not find this testimony credible.

The Court finds the testimony of the RA credible.  The RA testified that on her visit to Port Carlos the yacht was littered with items indicative of personal use.  Without more, petitioners' self-serving testimony does not meet the strict substantiation requirements of section 274(d).  Accordingly, we sustain respondent's determination with respect to this issue.  See Weekend Warrior Trailers, Inc. v. Commissioner, T.C. Memo. 2011-105 (holding that general testimony regarding a plane and a boat was insufficient to meet the substantiation requirements of section 274(d)).

B.    Raptor RV

Petitioners testified that the Raptor RV was used solely for business purposes.  Petitioners testified that the need for the Raptor RV was due to Masthead Marina's distance from Port Carlos.  Petitioners also testified that while parked at Masthead Marina, the Raptor RV served as a boat sales office and doubled as a place for nighttime security to use during their shift.  Further, petitioners testified to contributing the Raptor RV to Port Carlos.  Again, there was no testimony from anyone other than petitioners and their general manager to support their claims.

[*12] As with the Meridian 580, petitioners produced no records or documentation substantiating their use of the Raptor RV as a boat sales office or nighttime break room for security. The Court finds the testimony of petitioners and their general manager not credible and the testimony of the RA credible in that she observed personal items in the Raptor RV. Again, without more, petitioners' self-serving testimony does not meet the strict substantiation requirements of section 247(d). Accordingly, we sustain respondent's determination with respect to this issue.

III.    Section 165

Section 165(a) allows a deduction for any loss sustained during the taxable year that is not compensated for by insurance or otherwise. However, for losses not arising from a business, casualty, or theft, section 165(c)(2) limits the deduction in the case of an individual to losses incurred in any transaction entered into for profit.

A loss sustained on the sale of residential property purchased or constructed by the taxpayer for use as his or her personal residence and so used by him or her up to the time of sale is not deductible. Sec. 1.165-9(a), Income Tax Regs. If property is converted to income-producing purposes before sale and is used for such purposes at the time of its sale, a loss on the sale is allowed as a deduction.

**[\*13]** Sec. 1.165-9(b)(1), Income Tax Regs. In determining whether property was converted from personal use to income-producing use, the Court considers: (1) how long a taxpayer used the property as a personal residence; (2) whether the individual permanently abandoned all further personal use of the property; (3) whether the character of the property was recreational; (4) whether the property was offered for rent; and (5) whether and when the property was offered for sale, with offers of sale soon after abandonment suggesting that the property may not have been converted to income-producing purposes. Grant v. Commissioner, 84 T.C. 809, 825 (1985), aff'd without published opinion, 800 F.2d 260 (4th Cir. 1986); Redisch v. Commissioner, T.C. Memo. 2015-95. No one factor is determinative, and we consider all of the facts and circumstances. Saunders v. Commissioner, T.C. Memo. 2002-143, aff'd, 75 F. App'x 494 (6th Cir. 2003).

Petitioners lived at the 75th Place property for eight years until moving out. While petitioners' motives are unclear as to whether they intended to move back to the 75th Place property or whether the renovations had become a nearly decade-long hobby, the Court finds that the move to the Yale Apartment was not motivated by petitioners' testified desire to renovate and sell the home as an income-producing asset. Petitioners did not market the home for sale until 2012,

**[*14]** seven years after moving out and two years after renovations were complete. Neither did they seek or pursue other ways of generating income from the home until 2012. In addition they did not seek to determine the market value of the home through appraisals, receiving only a replacement cost appraisal for insurance purposes after refinancing in 2001. Thus, the Court does not find the length of time between petitioners' move to the Yale Apartment and the date of sale an indication of income-producing purposes.

As for the rental of the 75th Place property, petitioners testified to "never" wanting to rent out the home. Their only reason for renting it out was to satisfy their insurance company to keep the home insured. Even then, petitioners did not market the home publicly and eventually rented it out for less than fair market value to Mr. Langston's fraternity brother. Mr. Langston's testimony that the reason for not marketing the home publicly was an increased risk of vandalism is not credible. We find that the reason for renting the 75th Place property below market value was solely insurance driven and without profit motive.

The Court does not find that the 75th Place property was converted for income-producing purposes. Accordingly, we sustain respondent's determination with respect to this issue.

**[\*15]** IV.    Section 6662(a) Penalties for Tax Years 2012 and 2013

The Commissioner bears the burden of production with respect to petitioners' liability for penalties and must produce sufficient evidence indicating that it is appropriate to impose them.  See sec. 7491(c); Higbee v. Commissioner, 116 T.C. at 446.  As part of that burden, with respect to certain penalties, the Commissioner must also show that he complied with the written approval requirement of section 6751(b)(1).  Graev v. Commissioner, 149 T.C. 485, 493 (2017), supplementing and overruling in part 147 T.C. 460 (2016).

Section 6662(a) and (b)(1) and (2) imposes an accuracy-related penalty on any portion of an underpayment of tax that is attributable to the taxpayer's "[n]egligence or disregard of rules or regulations" or "substantial understatement of income tax".  Negligence includes "any failure by the taxpayer to keep adequate books and records or to substantiate items properly."  Sec. 1.6662-3(b), Income Tax Regs.  An understatement of income tax is substantial if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1)(A).

On the record before us, we find that if the Rule 155 computations confirm substantial understatements of income tax for the years at issue, then respondent

[*16] has met his burden of production.[8]  Once the Commissioner meets his

burden, the burden of proof is on the taxpayer to prove that the application of the

penalty is inappropriate.  See Higbee v. Commissioner, 116 T.C. at 446-447.

Petitioners argue that the accuracy-related penalties are inappropriate as they acted

with reasonable cause and in good faith in relying on the tax advice of Ms. Burch.

The accuracy-related penalty will not apply to any portion of the

underpayment for which a taxpayer establishes that he or she had reasonable cause

and acted in good faith.  Sec. 6664(c)(1).  The determination of whether a taxpayer

acted with reasonable cause and in good faith is made on a case-by-case basis,

taking into account all the pertinent facts and circumstances, including his or her

efforts to assess the proper tax liability, the knowledge and experience of the

taxpayer, and the extent to which he or she relied on the advice of a tax

professional.  See sec. 1.6664-4(b)(1), Income Tax Regs.

A taxpayer may be found to have acted with reasonable cause when he or

she exercises ordinary business care and prudence with respect to a disputed tax

item.  Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 98 (2000), aff'd,

---

[8]We note that the record contains evidence, in the form of a civil penalty
approval form, that respondent complied with the requirements of sec. 6751(b)(1).
See Graev v. Commissioner, 149 T.C. 485, 493 (2017), supplementing and
overruling in part 147 T.C. 460 (2016).

**[*17]** 299 F.3d 221 (3d Cir. 2002).  Reliance on the advice of an independent, competent professional as to the tax treatment of an item may meet this requirement.  See sec. 1.6664-4(b)(1), Income Tax Regs.  A taxpayer acts in good faith when he or she acts upon honest belief and with intent to perform all lawful obligations.  See Rutter v. Commissioner, T.C. Memo. 2017-174, at *45.

A taxpayer alleging reasonable, good-faith reliance on the advice of an independent, competent professional must prove that (1) the adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment.  Neonatology Assocs, P.A. v. Commissioner, 115 T.C. at 99.  A taxpayer's unconditional reliance on an otherwise qualified professional does not by itself constitute reasonable cause and good faith for purposes of section 6664(c)(1).  See Stough v. Commissioner, 144 T.C. 306, 323 (2015).  A taxpayer asserting reasonable reliance must show that the advice of a qualified adviser took into account all facts and circumstances and was not based on unreasonable factual or legal assumptions.  Sec. 1.6664-4(c)(1), Income Tax Regs.

Ms. Burch is a qualified professional and petitioners are well-educated, sophisticated individuals.  Specifically, Ms. Langston has an undergraduate degree

[*18] in accounting and was the named attorney, though she testified to not remembering, on at least two tax law cases while Mr. Langston has operated an oil and gas business since 1990.

Ms. Burch testified that she relied on oral and implied information from petitioners without documentation. Petitioners have failed to prove they provided accurate and credible information to Ms. Burch, and therefore they cannot avail themselves of a good faith and reasonable cause penalty defense. Further, the Court finds that because petitioners knew they had not provided necessary and accurate information to Ms. Burch, their reliance upon her was unreasonable and not in good faith.

We have considered all the other arguments made by the parties, and to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.